## MOORE *vs.* LITTEL.

In New York, where the rule in *Shelley's case* is abolished, if land be granted to A. for life, and after his death to his heirs and their assigns forever, the persons who, at the termination of the life estate, are the heirs of A. take as purchasers, and not by descent.

The remainder so limited is contingent, and the heirs apparent of the tenant for life have a future contingent estate, which, under the provisions of the revised statutes making "future estates descendible, devisable, and alienable, in the same manner as estates in possession," will pass by their grant of the land, in fee.

The child of an heir apparent whose mother dies before her ancestor, will not, in such case, be estopped by covenants of warranty in his mother's deed.

APPEAL from a judgment of the city court of Brooklyn. The action was brought to recover the possession of a lot of land situate in the city of Brooklyn, and was tried by the city judge without a jury, by consent of parties. He directed a judgment to be entered in favor of the plaintiff, and the defendant appealed to this court.

*N. B. Morse, D. E. Wheeler* and *Everett P. Wheeler,* for the appellant. I. Under the rule in Shelley's case, John Jackson would have taken an estate in fee. (4 *Kent's Com.* 229. 6 *Cruise's Dig.* 281, 295, *tit.* 38, *ch.* 14, §§ 17, 21, 50. *Doe* v. *Jerson,* 5 *Maule & Sel.* 95. *S. C. in error,* 2 *Bligh,* 1. *Wright* v. *Parson,* 1 *Eden,* 119.) The words of limitation engrafted on the limitation over to the heirs would not have converted the latter into words of purchase. (*Fearne on Remainders,* 181, 209. *Butler's note to Fearne,* 201. *Shelley's case,* 1 *Rep.* 93. *Schoonmaker* v. *Sheely,* 3 *Denio,* 486. *Brant* v. *Gelston,* 2 *John Cas.* 384.)

II. Under the revised statutes, (*Vol.* 1, *p.* 725, § 28; *Vol.* 3, *5th ed.* 12,) limitations to which the rule in Shelley's case would have applied, are assimilated to those in which the freehold was limited to a stranger, and the remainder does not vest till the termination of the previous life estate. (4 *Kent's Com.* 232. *Campbell* v. *Rawdon,* 18 *N. Y. Rep.* 415.)

III. There was then a contingent remainder in fee limited on the prior life estate. But the children of John Jackson, while their father lived, had neither right, title or interest in this remainder; neither *jus in re* nor *jus ad rem;* but a naked possibility only. Contingent remainders, where the person to take is ascertained, are assignable. (*See Roe* v. *Jones,* 1 *H. Bla.* 30.) But where there is an uncertainty in the person, and especially where the limitation is to the heirs of a person yet living, the heir apparent can at law neither release nor assign the possibility in him. (*Lampet's case,* 10 *Rep.* 51 *a. Fearne on Remainders,* 371. *Campbell* v. *Rawdon,*

Moore *v.* Littel.

18 *N. Y. Rep.* 415. *Doe* v. *Tomkinson*, 2 *Maule & Sel.* 165.
4 *Kent*, 208. 3 *Preston's Abst.* 5, 6. 2 *id.* 95, 96, 205.
1 *Hilliard's Real Est.* ch. 41, §§ 18, 33, *pp.* 515, 517, 3d ed.
*Nicoll* v. *N. Y. and Erie R. R.* 2 *Kern.* 121. *Jackson* v.
*Catlin*, 2 *John.* 248, 261. 4 *Cruise's Digest*, 303, *tit.* 32,
ch. 23, § 1. *Jackson* v. *Waldron*, 13 *Wend.* 178, 196, 222.)

IV. Although such a possibility is assignable in equity,
yet the assignment must be proved to have been in good faith
and for an adequate consideration, and must describe by apt
words the interest assigned. Here there is no attempt at
such proof, nor if there were, would it affect the legal title,
on which the plaintiff must sustain, if at all, his action of
ejectment. (2 *Story's Eq.* § 1040, *c, d*, § 1021. 4 *Kent*, 144.)

V. The fee was in the grantor and his heirs, until the death
of the tenant for life; and had the latter left no heirs, the
former would have held the property. This shows still more
clearly the absence of interest in the children of the tenant
for life. (2 *Preston's Abst.* 83, 99. *Fearne on Remain-
ders*, 528. 4 *Kent*, 257. *Greenleaf's note to* 2 *Cruise's Dig.*
330, *tit.* 16, ch. 8, § 2.)

VI. The warranty in the deed from John Jackson to his
children, does not estop the latter to deny that a fee passed
by that deed. (*Averill* v. *Wilson*, 4 *Barb.* 180. *Watkins*
v. *Holman's Lessee*, 16 *Peters*, 25, 51. *Blight's Lessee* v.
*Rochester*, 7 *Wheat.* 535. *Osterhout* v. *Shoemaker*, 3 *Hill*,
513, 519.)

VII. The warranty in the deeds of partition between the
children of John Jackson, does not estop them to deny that
a fee passed by those deeds. (1.) Because an estate for the
life of John Jackson passed by those deeds, and it is well
settled that there is no estoppel where an interest passes.
(4 *Kent*, 98. 2 *Washburn on Real Est.* 476. *Jackson* v.
*Hoffman*, 9 *Cowen*, 271. *Lewis* v. *Baird*, 3 *McLean*, 56,
78, 79. *Co. Litt.* 47 b. 2 *Preston's Abst.* 216.) (2.) Be-
cause the true state of the title is recited in these deeds.
(*Brewster* v. *Striker*, 2 *Comst.* 19. *Sinclair* v. *Jackson*,

Moore *v.* Littel.

·8 *Cowen*, 543, 586. *Co. Litt.* 352, *b.* 2 *Preston's Abst.* 209, *Doe* v. *Earl of Scarborough*, 3 *Ad. & Ellis*, 2, 12, 38. *Wheelock* v. *Henshaw*, 19 *Pick*, 341. *Hermitage* v. *Tomkins*, 1 *Ld. Ray.* 729.)

VIII. The foreclosure by advertisement of the mortgage to the plaintiff's grantor, does not bar the mortgagor, because the mortgagee bought in the property, The purchaser from him acquired no superior title. A bona fide purchaser, to be adjudged such, must aver and prove that he paid the purchase money before notice. There is no such proof here. (2 *R. S.* 547, § 8. 3 *id. 5th ed.* 861. *Harris* v. *Norton*, 16 *Barb.* 264. *Hyland* v. *Stafford*, 10 *id.* 558.)

IX. A mortgagor is not estopped to deny the mortgagee's title. There is no express warranty in the mortgage to the plaintiff's grantor, and implied warranties are abolished by statute. (1 *R. S.* 738, § 140. 3 *id. 5th ed.* 30.) The contrary doctrine originated in the theory that the mortgagor was tenant to the mortgagee. But the mortgagor's tenant is not tenant to the mortgagee, and can assert an outstanding title. (*Jackson* v. *Rowland*, 6 *Wend.* 666.) And a tenant could always show that his landlord's title had expired by effluxion of time. (1 *Washburn on Real Est.* 359. *Franklin* v. *Carter*, 1 *Com. B.* 750. *Doe* v. *Seaton*, 2 *Crompt. Mees. & Rosc.* 728. *Hill* v. *Saunders*, 2 *Bing.* 112, *affir'd*, 4 *Barn. & Cress.* 529.)

X. It is perfectly clear that the interest of the child of Fanny Baldwin, the grandson of John Jackson, was not affected by his mother's conveyance, and that he takes as purchaser, by virtue of the original deed from Samuel Jackson, an undivided eleventh of the whole property. (*Points* I, II, III; *and* 1 *R. S.* 739, §§ 141, 144. 3 *id. 5th ed.* 30, §§ 161 *to* 165.) The object of the deeds in partition, recited on their face, has thus been defeated, the warranties in them become inoperative, and the partition is of no effect upon the fee. (*Brewster* v. *Striker*, 2 *Comst.* 19. 4 *Cruise's Dig. tit.* 32, *ch.* 25, §§ 20, 21, *p.* 357. *Bustard's case*, 4 *Rep.* 121.

*Co. Litt.* § 262, *p.* 174, *a.* *Quick* v. *Stuyvesant,* 2 *Paige,* 84. *Jackson* v. *Pulver,* 8 *John.* 370. 2 *Smith's Lead. Cas.* 438, *note to Trevivan* v. *Lawrence.*)

XI. The case of *Wilson* v. *Wilson,* (32 *Barb.* 328,) does not apply, because the remaindermen in that case were ascertained; and the general assignment was after the remainders had vested. *Miller* v. *Emans,* (19 *N. Y. Rep.* 385,) does not apply, because the release in that case was by one joint-tenant to another who was in possession of the freehold. The release here is by a tenant in common to another not in possession of the freehold.

*D. P. Barnard,* for the respondent. I. By the deed from Samuel Jackson to John Jackson, the whole estate of the grantor passed. No *reversion* remained in him. Before the revised statutes, according to the rule in Shelley's case, (4 *Kent's Com.* 214, *lect.* 59, § 4,) John Jackson would have taken an estate in fee, as the word "heirs" was a word of *limitation* and not of *purchase.* (1 *R. S. part* 2, *ch.* 1, *art.* 1, *tit.* 41. *Brant* v. *Gelston,* 2 *John. Cas.* 384. *Schoonmaker* v. *Sheely,* 3 *Denio,* 485.)

II. But by 1 R. S. 725, § 28, the rule in Shelley's case is changed, and those who on the termination of the life estate shall be the heirs take as *purchasers* by virtue of the remainder so limited to them. By sections 7 to 13 of the same article, the estate of the children of John Jackson, who were presumptively his heirs, was an expectant estate, and by section 35 of same article, such estates are *alienable* in the same manner as estates in possession. (*Lawrence* v. *Bayard,* 7 *Paige,* 70. *Miller* v. *Emans,* 19 *N. Y. Rep.* 384. *Wilson* v. *Wilson,* 32 *Barb.* 328.)

III. By the deed from John Jackson to his children, they became seised of the premises as tenants for the life of their father, with an expectant estate in fee liable to be defeated in the case of such as did not survive their father. (*Rogers* v. *Rogers,* 3 *Wend.* 503. *Tallman* v. *Wood,* 26 *id.* 1. *Tanner*

v. *Livingston*, 12 *id.* 83.   *Doe ex dem. Barnes* v. *Provoost*, 4
*John.* 61.   *Moore* v. *Lyons*, 25 *Wend.* 119.   *Williamson* v.
*Field*, 2 *Sand. Ch.* 553.   *Lawrence* v. *Bayard*, 7 *Paige*, 70.)

IV. By the partition deeds from these children to each
other, and the covenants of warranty of the grantors, the title
which the grantors then had, or which they afterwards should
be entitled to, was vested in the grantees. (*Vanderheyden*
v. *Crandall*, 2 *Denio*, 9; 1 *Comst.* 491.   *Jackson* v. *Mur-*
*ray*, 12 *John.* 201.   *Jackson* v. *Stevens*, 13 *id.* 316.   *Jack-*
*son* v. *Hubble*, 1 *Cowen*, 613.   *Bank of Utica* v. *Mersereau*,
3 *Barb. Ch.* 528.)

V. Although as between the plaintiff and Fanning Bald-
win, the latter is entitled to 1-11th of the premises, yet if he
should seek to recover the same, he will be liable for a breach
of his mother's covenant of warranty to the extent of the es-
tate which he inherited from her. By the partition his
mother took 1-11th in severalty, which he inherited. By her
death before John Jackson, he can claim the one undivided
eleventh of the whole farm, subject to his liability as heir of
his mother for a breach of his mother's warranty. But it
does not lie in the mouth of Parmenus Jackson, the mort-
gagor, or the defendant, as his tenant, to deny that the plain-
tiff, as Beard's grantee, is entitled to the premises in fee. He
is estopped from so doing. (*Pitts* v. *Wilder*, 1 *Comst.* 525.
2 *Greenl. Ev.* § 307.   1 *Cowen & Hill's Phil. Ev.* 467, *ch.* 8,
§ 10.   *Jackson* v. *Harder*, 4 *John.* 202.   *Jackson* v. *Bush*,
10 *id.* 223.   *Jackson* v. *Hinman*, 10 *id.* 292.   *Moseley* v.
*Moseley*, 15 *N. Y. Rep.* 334.   *Barber* v. *Harris*, 15 *Wend.*
615.   *Hill* v. *Hill*, 4 *Barb.* 419.)

*By the Court*, LOTT, J. This action was commenced in
the city court of Brooklyn, on the 22d day of May, 1861, for
the recovery of a lot of land lying in the city of Brooklyn,
being a part of a large tract formerly owned by Samuel Jack-
son. He, by a deed bearing date the 15th day of February,
1832, granted and conveyed the whole of said tract to John

Jackson, named therein as party of the second part, " for and during his natural life, and after his decease to his heirs and their assigns," with a *habendum* clause in the following terms, viz : " To have and to hold the above granted, bargained and described premises, with the appurtenances, unto the said party of the second part, for and during his natural life, and after his death, then to his heirs and their assigns, to their own proper use, benefit and behoof forever." This deed contains the usual covenants of *seisin*, and for quiet possession, and against incumbrances, and also contains a covenant by the grantor, for the further assurance of the premises intended to be granted " to the said party of the second part, his heirs and their assigns, after the natural life of the said party of the second part forever," and a covenant of general warranty thereof " unto the said party of the second part for and during his natural life, then to his heirs and their assigns forever."

John Jackson, on the 25th day of April, 1848, had eleven children, who, if he had then died, would have been his only heirs at law; and he on that day executed a deed with full covenants and warranty to those children, purporting to convey a large tract of land, including that in question, for the consideration of one thousand dollars. Subsequently, and on the 14th day of August, 1848, those children made a partition among themselves of the land so conveyed by their father, and executed deeds to each other with covenants for quiet and peaceable possession, to carry the same into effect. A number of lots, including that sought to be recovered in this action, were thereupon conveyed to Parmenus and Edward Jackson, two of the sons, by their brothers and sisters, and other lots were in like manner conveyed to Rosetta Jackson and Fanny Jackson, two of the daughters. The said Parmenus and Edward Jackson afterwards, and on the 1st day of May, 1848, executed a mortgage purporting to convey the same in fee to William Beard, to secure the payment of three hundred dollars, with interest. That mortgage was subse-

quently foreclosed, the lot was sold on such foreclosure, and the mortgagee, the said William Beard, became the purchaser thereof, who afterwards, and on the 1st day of February, 1855, conveyed the same to Herbert T. Moore, the plaintiff.

Fanny Jackson, one of the said daughters, after the said partition deeds were executed, was lawfully married to Parker Baldwin, and continued his wife until the 3d day of June, 1859, when she died, leaving Fanning Baldwin her only child and issue, her surviving, who was born February 21st, 1859, and was living when this action was tried. Subsequent to the death of the said Fanny, and on the 5th day of March, 1861, the said John Jackson, her father, died, leaving all of said children except the said Fanny, his survivors.

The defendant claimed to hold the premises in question as tenant of the said Parmenus Jackson, and put the title of the plaintiff, who claimed the same in fee simple, in issue. Upon the facts above stated, the city judge, who by the consent of the parties tried the issue without a jury, decided that the plaintiff, on the 18th day of February, 1855, was possessed of the premises in question as the owner thereof in fee simple, and that the defendant, on the 1st day of May, 1860, evicted him, and unlawfully withheld the possession thereof from him, and directed judgment for the plaintiff.

This judgment was, in our opinion, erroneous. It was evidently the intention and object of the deed of Samuel to convey to John Jackson a life estate only; and as it was executed subsequent to the time the revised statutes took effect, it must be construed by the rules prescribed thereby. They expressly provide (1 *R. S.* 725, § 28) that " when a remainder shall be limited to heirs, or heirs of the body of a person to whom a life estate in the same premises shall be given, the persons who on the termination of the life estate shall be the heirs, or the heirs of the body of such tenant for life, shall be entitled to take as purchasers by virtue of the remainder so limited to them." This provision abrogates the rule in *Shelley's case*, under which John Jackson would have held the

Moore *v.* Littel.

title in fee as absolute owner, and his heirs could only have claimed by inheritance from him. He, by his deed, could only convey the life estate held by him, and as he did not die till the 5th day of March, 1861, that estate under his deed to his children, passed and became vested in them.

The question is then presented, whether those children had any estate or interest in the remainder during the lifetime of their father, the tenant for life. The limitation in the deed is to his heirs, and by the provisions above recited it is declared that in such a case the persons who, on the termination of the life estate, shall be such heirs, shall be entitled to take as purchasers, by virtue of the remainder so limited to them. The term " heirs" is thereby changed from a word of limitation to one of purchase, and a mere *descriptio personarum*, or specific designation of the individuals who, when the life estate determines, shall have the right to the possession and enjoyment of the property. Until that event ceases there is or can be no person in existence that answers to or falls within the description or class of persons designated; *nemo est hæres viventis;* and therefore no persons can stand in the relation of heir, or fall within the meaning of that term, until the death of the tenant for life; and upon that event the remainder becomes vested in possession. There is, nevertheless, by the very terms of the deed, an estate in remainder, created at the time of its delivery. It is, however, one in expectancy merely, limited by the terms of the grant to take effect or commence in the possession at a future day, (on the death of the tenant for life,) and it is therefore denominated a future estate. Such estates are said to be vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent, whilst the person to whom, or the event upon which, they are limited to take effect, remains uncertain. (*See* 1 *R. S.* 722, §§ 7, 8, 9, 10, 11, 13, 28.)

In the case under consideration, there was no person in be-

ing during the lifetime of John Jackson, as before stated, who stood or could stand in the relation or character of heir to him and consequently no one who could be said to have an immediate right of possession to the land, on the termination of his life estate. Until that event, it remained unknown and uncertain what persons would be his heirs, and entitled to take. The remainder limited to them was therefore a contingent future estate. Such appears to be the construction put on section 28, above referred to, by Chancellor KENT, in his *Commentaries, vol.* 4, *p.* 232. He there, after quoting the section, and saying that the rule in *Shelley's case* was thereby abolished, says : " The abolition of the rule applies equally to deeds and wills, and in its practical application it will, in cases where the rule would otherwise have applied, change estates in fee into contingent remainders." (*See also Campbell* v. *Rawdon*, 18 *N. Y. Rep.* 416.)

Assuming then that the said children had such an estate, the operation and effect of the partition deeds executed between them remains to be considered.

It is provided by the revised statutes, (*vol.* 1, *p.* 725, § 25,) that " expectant estates are descendible, devisable and alienable, in the same manner as estates in possession." In these are included contingent estates in remainder. (*Id. p.* 722, §§ 7 *to* 11, 13, *before referred to.*) Their contingent estate in remainder was therefore alienable, and it was competent for them to convey the same as well as the estate for life of John Jackson, which had become vested in them at the time their deeds were executed. They were then of full age, and competent to convey and enter into the covenants contained in those deeds. Those executed to Parmenus and Edward Jackson conveyed all the estate and interest of their brothers at that time, to them, and the mortgage from them to Beard passed to him this as well as that which was held, or to which they were entitled, in their own right; and the plaintiff, under the proceedings in foreclosure of that mortgage,

and by the deed of Beard to him, became the owner, entitled to the same rights. (*See Lawrence* v. *Bayard,* 7 *Paige,* 76.)

All of those children, except Fanny Baldwin, survived John Jackson, their father; and they, with Fanning Baldwin, the only issue of Fanny, on his death became and were his only heirs at law, and their estate, which had before been contingent, became vested in possession and absolute; and thereupon the plaintiff became the owner in his own right in fee simple of all the estate in the lot in question, except the share (being one-eleventh part) in which Fanny Baldwin until her death, had a contingent estate. That estate determined by her death and upon the death of John Jackson, Fanning Baldwin, who was one of the heirs at law, became vested with the title to that share in fee simple, as purchaser, under the deed to his grandfather, and not as heir at law to his mother. Her covenants do not, therefore, affect the title.

The result of the views above expressed is that the plaintiff was entitled to recover ten-eleventh equal parts of the lot in question, being the shares of the surviving children of John Jackson, but that he had no right to the share of Fanning Baldwin (the other eleventh) which had become vested in him before the defendant entered into the possession of the premises, and which was then and has continued to be, outstanding.

The judgment, as to that, is therefore erroneous, and must for that reason be reversed; and a new trial is ordered, costs to abide the event.

[ORANGE GENERAL TERM, September 14, 1863. *Brown, Scrugham* and *Lott,* Justices.]