MELISSA SURDAM et al., Appellants, v. DANIEL CORNELL et al.,
Impleaded, etc., Repondents.

By the will of C. he gave his real estate to his widow for life, and after
her death to his children, six in number, "share and share alike, ✻ ✻ ✻
during the terms, respectively, of their natural lives," and upon the death
of a child "the share of such child" was given "to his or her heirs in
fee forever." The concluding clause of the section was as follows: "My
intention being that my widow shall have a life estate in said lands, and
after her decease each of my then living children a life estate in the
same, and at their decease their children, if any, shall hold the same in
fee." Two of the children, a son and daughter, died intestate, each leav-
ing children, and thereafter the widow died. In an action for a partition
of the real estate brought by the children of the deceased son of the
testator, held, that the design of the testator was to give successive life
estates, first to his widow in the whole real estate, then to each of the
children in one-sixth part thereof, with the remainder in fee to their heirs;
that there was no suspension of the power of alienation for more than
two lives in being at the death of the testator; that upon such death the
plaintiffs became vested in fee as purchasers, by virtue of the remainder
so limited to them, with one-sixth of the real estate, subject to the two
outstanding life estates; subject, also, to open and let in after-born
children; that upon the death of the father and the widow their fee
became absolute, as did also that of the children of the deceased
daughter; and that the four living children of the testator at the death
of the widow took a life estate in the four-sixths remaining, and on the
death of either their heirs-at-law take a fee absolute in their portion.

(Submitted June 28, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Supreme
Court in the fourth judicial department, entered upon an order
made November 9, 1886, which reversed a judgment in favor
of plaintiff, entered upon a decision of the court on trial at
Special Term.

The nature of the action and the facts are sufficiently stated
in the opinion.

E. C. Moody for appellants. If at the death of the testator
(the time when the estates were created), there was a possi-
bility of the power of alienation being suspended beyond the

statutory limit, the devise to that extent is void. (*Ward* v. *Ward*, 105 N. Y. 74; *Hawley* v. *James*, 16 Wend. 120; 4 Kent's Com. 283; *Armory* v. *Lord*, 9 N. Y. 415; *Schettler* v. *Smith*, 41 id. 334; *Phillips* v. *Davis*, 92 id. 204; *Roseboom* v. *Roseboom*, 81 id. 359.) Courts in construing wills seek to be governed by the intention of the testator as gathered from the will and the circumstances surrounding it. (*Monarque* v. *Monarque*, 80 N. Y. 230; *Barker* v. *Barker*, 45 Hun, 295; *Prowitt* v. *Rodman*, 37 N. Y. 54; *Teed* v. *Morton*, 60 id. 505; *Phillips* v. *Davis*, 92 id. 199; *Roseboom* v. *Roseboom*, 81 id. 356; *Van Nostrand* v. *Moore*, 52 id. 12; *Purdy* v. *Hoyt*, 92 id. 446; *Matter of Estate of Brown*, 93 id. 298; 49 Hun, 280.)

*Alex. & A. W. Cumming* for respondents. The devise in question does not suspend the power of alienation in contravention of the statute. (2 R. S. chap. 1, tit. 2, art. 1, § 44 [7th ed.] 2177, 2179, § 28; *Monarque* v. *Monarque*, 80 N. Y. 324; *In re Dickie*, 5 Redf. 284; *Vanderpoel* v. *Loew*, 112 N. Y. 167; *Stevenson* v. *Leslie*, 70 id. 512–516; *Wells* v. *Wells*, 88 id. 332, 333; *Tiers* v. *Tiers*, 98 id. 568; *Delafield* v. *Barlow*, 107 id. 535; *Miller* v. *Wright*, 109 id. 194; *Van Brunt* v. *Van Brunt*, 111 id. 178.) Up to the death of the widow no provision was made for grandchildren. (*Wylie* v. *Lockwood*, 86 N. Y. 291; *Carmichael* v. *Carmichael*, 1 Abb. Ct. App. Dec. 309; *Cushman* v. *Horton*, 59 N. Y. 149; *Post* v. *Hover*, 33 id. 593–601; *Dubois* v. *Roy*, 35 id. 162; *Matter of Verplanck*, 91 id. 443; *Weeks* v. *Cornwell*, 104 id. 337; *Manice* v. *Manice*, 43 id. 303–362.)

HAIGHT, J. This action was brought for the partition of real estate.

The facts are undisputed and are, in substance, as follows: Abel Cornell died on the 23d day of September, in the year 1860, leaving a last will and testament, which has been duly proved and admitted to probate. At the time of his death he was seized and possessed of the real estate in controversy, and

left him surviving Aner Cornell, his widow, and six children; that in November, 1880, his widow died, and, prior to her death, two of the children, to wit, Thomas Avery Cornell and Fanny Guyon, died intestate, each leaving children; that the plaintiffs, Melissa Surdam, Wallace Cornell and Eugene Cornell are the children and only heirs-at-law of Thomas Avery Cornell. The provisions of the will bearing upon the question under consideration are as follows: " *Third.* I give and devise all my real estate, and of which I shall die seized, to my wife Aner Cornell, to be used and enjoyed by her during her natural life, and from and after her decease I give and devise all the said real estate, wherever situated, to all my children, share and share alike, to be used and enjoyed by them during the terms, respectively, of their natural lives, and from and after the decease of such of said children, I give and devise the share of such child to his or her heirs in fee forever. But in case any of my said children shall die before my decease, I give and devise the share that would have gone to such child, if living, to his or her children forever, and in case any of my children shall die without issue before my said wife, I give and devise such share as is hereby given to such child equally to all his surviving brothers and sisters as if he had not been born. My intention being that my wife shall have a life estate in said lands, and after her decease each of my then living children a life estate in the same, and at their decease their children, if any, shall hold the same in fee."

The trial court found, as conclusions of law, that there was a possibility of a power of alienation being suspended beyond the statutory limit, and that, therefore, the above provisions, except as to the life estate given to the widow, were void, and that after the death of the widow the real estate descended to the heirs-at-law of the testator.

The General Term held that there was no suspension of the power of alienation for a longer period than during the continuance of two lives in being at the time of the decease of the testator; that the four surviving children, on the death of the widow, took a life estate in the whole premises, and that

on their decease the same would descend to their children. The judgment was, consequently, reversed, and the complaint dismissed, with costs.

We quite agree with the General Term to the effect that there was no suspension of the power of alienation beyond the lives of two persons in being ; that if one of the four life tenants should die after the widow without children, his portion, under the will, would go to his heirs-at-law in fee, and that the same would not go to the remaining brothers and sisters for life. (*Monarque* v. *Monarque*, 80 N. Y. 320.)

But we do not agree with the General Term as to its construction of the will that the four children surviving the widow take a life estate in the *whole* of the land. The will does not in terms so provide, and it does not appear to us that such was the intention of the testator. The General Term doubtless drew its conclusion from the concluding clause of the section of the will quoted, which provides that "My intention being, that my wife shall have a life estate in said lands, and after her decease each of my then living children a life estate in the same, and at their decease their children, if any, shall hold the same in fee." But it will be observed that he does not state that each of the then living children shall have a life estate in a fourth or in the whole of the land. This clause was doubtless inserted as explanatory of the former provisions and to make it distinctly appear that life estates only were intended to be given to the widow and children. It does not attempt or purport to specify the amount of such life estates as to whether it shall be a fourth or a sixth. This clause must be construed in connection with the other provisions, and, if possible, harmonized with them so that full force may be given to each, and, if possible, the intention of the testator carried out.

There were no deaths among the children of the testator prior to his death. None of his children died without issue before his wife. Those that did die left issue them surviving. The only clause, therefore, necessary to be construed is the following : "And from and after her decease (meaning his

widow) I give and devise all the said real estate wherever situated to all my children, share and share alike, to be used and enjoyed by them during the terms, respectively, of their natural lives, and from and after the decease of such of said children I give and devise the share of such child to his or her heirs in fee forever." Two life estates are plainly given, one to the widow and the other to his children. The heirs or children of the testator's children take the fee forever. The statute provides that "where a remainder shall be limited to the heir or heirs of the body of a person to whom a life estate in the same premises shall be given, the person who on the termination of the life estate shall be the heir or heirs of the body of such tenant for life shall be entitled to take as purchasers by virtue of the remainder so limited to them." (3 R. S. [7th ed.] 2177, § 28.)

In the case of *Monarque* v. *Monarque* (*supra*), a life estate was first given to the widow, and by the second clause of the will he gave the income arising after her decease to his four daughters during their respective lives, and the remainder to their respective children, their heirs, etc. It was held that the remainder given by the second clause vested upon the death of the testator in the children of the testator's daughters living at that time, subject, however, to open and let in afterborn children who might come into existence during the life of the mother. To the same effect is *Moore* v. *Littel* (40 Barb. 488; 41 N. Y. 66); *House* v. *Jackson* (50 id. 161).

It, therefore, appears to us that upon the death of the testator the plaintiffs, as the children of Thomas Avery Cornell, became vested in fee, as purchasers, by virtue of the remainder so limited to them, with one-sixth of the real estate of which the testator died seized. It was subject, however, to two outstanding life estates; one to the widow of the deceased and the other to the father of the plaintiffs. The estate so vested was undoubtedly liable to be lessened by the coming in of after-born children, but such as it was it vested in the plaintiffs on the death of the testator; and the death of Thomas Avery Cornell, their father, removed one of the outstanding

life estates, and on the death of the widow their fee became absolute　The children of Fanny Guyon would likewise become vested in fee absolute of their mother's portion. The four children of the testator surviving the widow would, therefore, take a life estate in the four-sixths that remained, and on the death of either of them their heirs-at-law take a fee absolute of their portion.

It follows that the judgment of the General Term should be so modified as to reverse the judgment and grant a new trial, costs to abide the final award of costs.

All concur, except FOLLETT, Ch. J., not sitting.

Ordered accordingly.