In the Matter of the Accounting of STEPHEN BROWN and
DWIGHT MERRIMAN, as Trustees under the Will of ABRAHAM
WING, Deceased.

ELLA W. SHARP, Appellant; WILLIAM H. WITHINGTON, as
Administrator of HOWARD L. MERRIMAN, Deceased, et al.,
Respondents.

1. WILL — VESTED REMAINDERS. Where the apparent intention of the
testator is that remainders shall vest in persons as to whom there is no
uncertainty, subject to the life estate or estates created by the will (as, that
they shall vest in his grandchildren, and there are grandchildren in being
at his death, and there is nothing in the will making such provision depend-
ent upon survivorship to the time of distribution), the disposition relates
back to the time of the testator's death, and the vesting is of that date.

2. POWER OF SALE. The presence in a will, of an imperative power of
sale given to the executors to be exercised at a future time, does not
necessarily prevent a vesting, especially when it is apparent from the
other provisions of the will that it was intended that the estate should
vest presently.

3. CONVERSION OF REAL PROPERTY INTO PERSONAL. The fact that by the exercise of the power of sale given to the trustees of an estate for lives, and to which the remainder is subject, real property would become personal property, makes no difference in the effect of the power of sale upon the question of the vesting of the remainder as of the date of the testator's death.

4. ESTATE OF TESTAMENTARY TRUSTEES. Where an estate is devised in trust, to provide an income for life beneficiaries and at their death to divide among remaindermen as to whom there is no uncertainty, the trust estate vests in the trustees not absolutely, but subject to the remainder over on the termination of the trust, and the remainder does not vest in the trustees at all.

5. DIRECTION TO DIVIDE. The general rule, that when a testamentary gift is found only in a direction to divide at a future time, the gift ·is future and contingent and not vested, is subordinate to the primary canon of construction, that the intent, to be collected from the whole will, must prevail.

6. DETERMINATION OF CLASS. When a' devise or bequest is made to a class, as, to children of children, the class will, in the absence of a definite intention disclosed by the will, be ascertained and determined as of the death of the testator; and if the estate then vests, it vests in the individual beneficiaries as tenants in common.

7. INCOME ATTACHED TO VESTED REMAINDERS, PENDING DISTRIBUTION OF CORPUS. If a will gives a portion of the income of the estate to the widow for life and the income of a specific share of the residue to each child for life, with remainders over to children's children, in such terms that the remainders vest, at the testator's death, in the grandchildren in being at that time, as tenants in common, subject to the outstanding life estates, with a postponement of distribution dependent upon the death of the widow, the estate vested in the grandchildren draws to it their parent's share in the income, in case of the death of the testator's children, the widow still living; and if a grandchild, whose remainder was vested, dies, his share in such income passes to his personal representative.

*Matter of Merriman*, 91 Hun, 120, affirmed.

(Argued October 27, 1897; decided November 23, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department, entered January 3, 1896, which affirmed a decree of the Surrogate's Court of Warren county, stating and settling the accounts of Stephen Brown and Dwight Merriman, as trustees under the will of Abraham Wing, deceased.

The facts, so far as material, are stated in the opinion.

*Richard L. Hand* for appellant. The entire estate is vested in the executors, as trustees, and the title will remain in them until the death or remarriage of Frances A. Wing. (Schouler on Wills, § 466; 1 Jarman on Wills [5th ed.], 839; *Cochrane* v. *Schell*, 140 N. Y. 516; *Dana* v. *Murray*, 122 N. Y. 604; *Delaney* v. *McCormack*, 88 N. Y. 174; *Vincent* v. *Newhouse*, 83 N. Y. 505; *Downing* v. *Marshall*, 23 N. Y. 366; *In re Baer*, 147 N. Y. 348; *Delafield* v. *Shipman*, 103 N. Y. 463; *Shipman* v. *Rollins*, 98 N. Y. 311; *Smith* v. *Edwards*, 88 N. Y. 92; *Colton* v. *Fox*, 67 N. Y. 348.) There is no vesting of income, but a simple direction to pay it, as it comes into existence, to a class then in existence. The appellant, Ella W. Sharp, is the only person now answering the description, and, therefore, is solely entitled to said income. (*Scott* v. *Nevius*, 6 Duer, 672; *Tolles* v. *Wood*, 99 N. Y. 616; *Wetmore* v. *Wetmore*, 149 N. Y. 520; *In re Allen*, 151 N. Y. 243; *In re Kimberly*, 150 N. Y. 90; *In re Baer*, 147 N. Y. 348; *Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125; *Delaney* v. *McCormack*, 88 N. Y. 174; *Ferrer* v. *Pyne*, 81 N. Y. 281; *Hoppock* v. *Tucker*, 59 N. Y. 202.) If the construction of this will were doubtful that construction should prevail which prefers the blood of the testator to strangers. (*Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Wood* v. *Mitcham*, 92 N. Y. 375; *Kelso* v. *Lorillard*, 85 N. Y. 177; *Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Scott* v. *Guernsey*, 48 N. Y. 107.)

*Edwin Countryman* for respondents. The principal reliance of the appellant is that the entire estate is vested in the executors, as trustees, and the title will remain in them until the death or remarriage of the testator's widow; and the argument is that during the continuance of the trust, so called, the title or interest of the remaindermen could not vest in any portion of the estate. This view is at variance with the statute and all the authorities. (1 R. S. 729, §§ 60, 61; *Crooke* v. *County of Kings*, 97 N. Y. 421; *In re Tienken*, 131 N. Y. 391; *Stevenson* v. *Lesley*, 70 N. Y. 512; *Heermans* v. *Robertson*, 64 N. Y. 332; *Heermans* v. *Burt*, 78 N. Y.

259; *In re Mahan*, 98 N. Y. 372; *Goebel* v. *Wolf*, 113 N. Y. 405; *Van Axte* v. *Fisher*, 117 N. Y. 401; *Knowlton* v. *Atkins*, 134 N. Y. 313; *In re Young*, 145 N. Y. 535; *Losey* v. *Stanley*, 147 N. Y. 560.) The interests given to the children of the two daughters of the testator vested at his death. (1 R. S. 723, § 13; *Moore* v. *Littel*, 41 N. Y. 66; *Lawrence* v. *Bayard*, 7 Paige, 70; *Mead* v. *Mitchell*, 17 N. Y. 210; *Sheridan* v. *House*, 4 Abb. Ct. App. Dec. 218; *House* v. *Jackson*, 50 N. Y. 161; *Monarque* v. *Monarque*, 80 N. Y. 320; *Surdam* v. *Cornell*, 116 N. Y. 305; *Hotaling* v. *Marsh*, 132 N. Y. 29.)

*Charles A. Blair* for William H. Withington, respondent. The estates of Mary W. Merriman for life and of her children in fee, between whom the entire fee was parceled out, all vested at the instant of the death of the testator, the only difference being that the estate of the mother was in possession and that of the children was in remainder. (1 Jarman on Wills [2d ed.], 620; *Moore* v. *Lyons*, 25 Wend. 119; *Byrnes* v. *Stilwell*, 103 N. Y. 453; *In re Crossman*, 6 Dem. 148; *Manice* v. *Manice*, 43 N. Y. 368.) The language of the "intention clause" clearly imports a direct gift to the grandchildren, and that, therefore, the rule invoked by the appellant, that where there is no gift but by the direction to pay at a future time, the gift is contingent, does not apply. There is a clear gift distinct from the direction to pay or distribute at a future time, and in such cases the direction to pay in the future does not postpone the vesting. (29 Am. & Eng. Ency. of Law, 454, 458; *In re Young*, 145 N. Y. 535; 1 Jarman on Wills [6th ed.], 813; *Madison* v. *Wood*, 4 K. & J. 709; *Fuller* v. *Winthorp*, 3 Allen, 51; *Fairly* v. *Kline*, 2 Pennington, 554; *Provenchere's Appeal*, 67 Penn. St. 464; *Tayloe* v. *Mosher*, 29 Md. 443; *Brent* v. *Washington*, 18 Gratt. 526; *Cropley* v. *Cooper*, 86 U. S. 174; *In re Tienken*, 131 N. Y. 391; *Crooke* v. *County of Kings*, 97 N. Y. 421.) The courts have always attached importance to the absence of limitations over, or the lack of words of survivorship, or other

expressions in the will intimating selection among the objects of the testator's bounty in case of deaths before the period of distribution. (*Byrnes* v. *Stilwell*, 103 N. Y. 453; *Shangle* v. *Hallock*, 39 N. Y. Supp. 619.) A gift of the interest, income or produce of a fund, without limitation as to continuance or without limit as to time, will, according to a settled rule of construction, be held to pass the fund itself, and this will be the effect given to a gift made in this form, whether the gift be made directly to the legatee or through the intervention of a trustee. (2 Wms. on Exrs. 1193; *Craft* v. *Snook*, 13 N. J. Eq. 121; *Gulick* v. *Gulick*, 25 N. J. Eq. 324; *Huston* v. *Read*, 32 N. J. Eq. 591; *Patterson* v. *Ellis*, 11 Wend. 259; *Schermerhorn* v. *Cotting*, 131 N. Y. 48; *Lane* v. *Goudge*, 9 Ves. Jr. 225; *Jones* v. *Mackilwain*, 1 Russ. 220; *Potts* v. *Atherton*, 28 L. J. Ch. 486.)

*A. D. Wait* for Dwight Merriman, respondent. If, as insisted by the appellant, this will is to be construed as creating no interest in the children till the time shall come for the taking by them, then in the event, which is possible, that Mrs. Wing should survive all the grandchildren, or at least all of the children of Mrs. Merriman, there would be complete or partial intestacy and the intention so clearly disclosed of the testator, wholly or in part defeated; there is in this case no room for such a construction. (*Vernon* v. *Vernon*, 53 N. Y. 351; *Provoost* v. *Calyer*, 62 N. Y. 545; *Schult* v. *Moll*, 132 N. Y. 122; *In re Tienken*, 131 N. Y. 391; *Stevenson* v. *Lesley*, 70 N. Y. 512; *Moore* v. *Lyons*, 25 Wend. 126; *Manice* v. *Manice*, 43 N. Y. 303; *Traver* v. *Schall*, 20 N. Y. 89; *Everitt* v. *Everitt*, 29 N. Y. 39; *Sheridan* v. *House*, 4 Keyes, 569; *Bowditch* v. *Ayrault*, 138 N. Y. 222; *In re Young*, 145 N. Y. 535, 539.)

HAIGHT, J. The question presented for review arises out of the construction which should be given to the will of Abraham Wing, who died on the 13th day of June, 1873, leaving him surviving his widow, Frances A., and two daughters

Mary W., the wife of Dwight Merriman, and Ella W. Parker. At the time of his decease his daughter Mary W. had three children, Tracy D., Ella W. and Howard L. Merriman. His daughter Ella W. also had children, but they have no interest involved in this appeal. All of the testator's grandchildren were born before the execution of the will, and survived the testator. Tracy D. Merriman died intestate, unmarried, January 19th, 1880. Mary W. Merriman died June 10th, 1892. Howard L. Merriman died August 4th, 1893. The testator's daughter Ella W. Parker died October 3d, 1892; all of her children survived. The appellant, Ella W. Sharp, is the sole surviving child of Mary W. Merriman. The widow of the testator, Frances A., is still living and has never remarried.

The testator devised and bequeathed to his widow his mansion house and lot, so-called, during the time that she should remain his widow, and also gave her other personal property, together with an annuity of three thousand dollars. Other specific bequests were made, which are not involved in this controversy. He then gave and devised all the rest and residue of his real and personal estate, of whatever name or kind and wheresoever situate, to his executors, in trust for the purposes named in his will, which he fully described; and then, by the fourth and fifth clauses of his will, provided:

" *Fourth.* I hereby authorize and direct my executors to apply and appropriate the avails and proceeds of said property and income therefrom to the uses and purposes following: 1st. To pay my funeral expenses and all of my just debts. 2nd. To pay the above-mentioned annuity to my wife and also so much more money (if any) as shall be at any time and all times necessary and proper in the discretion of my executors for the support and maintenance of said Frances A. and to enable her to keep up and support the same style of living and expenditure of money in all respects, including charitable and other purposes, that she has heretofore enjoyed or now enjoys, and my executors are hereby authorized and directed to pay such sum or sums of money in addition to said annuity as may from time to time be proper in their dis-

cretion for such purpose to said Frances A. Wing, and her receipts therefor shall be a sufficient discharge to them and voucher for money so paid. 3rd. To furnish whatever money may be necessary, in the discretion of my executors, for the reasonable care and support of my sister, Mary Ann Wing, from time to time as she shall need the same, and also to pay her funeral expenses. 4th. To pay over all the balance of the income and increase of my estate except the expenses of the execution of this trust, including taxes and all other legal charges thereon (which are to be first paid), annually until the death or marriage of said Frances A. to my said daughters Mary W. Merriman and Ella W. Parker, share and share alike, for their own use and benefit respectively, and in case of the decease of either of said daughters during the widowhood of said Frances A., as aforesaid, then, and in such case, to pay the (half) share of said income to the children of such deceased daughter which would have belonged and been paid to the deceased daughter had she survived; and in case of the death of both of said daughters during the widowhood of said Frances A., then such income shall be paid and belong to the children of said daughters, respectively, one-half of said income to the children of Mary W., and the other half to the children of Ella W., from and after the death of each of said daughters respectively.

" *Fifth.* I direct my executors on the death, or if she shall marry, then on the marriage of said Frances A., to convert said mansion house and lot and any other real estate remaining undisposed of (if any) into personal property, so that my whole estate shall become personal property; and if my sister Mary Ann shall then be living, to set apart the sum of ($5,000) five thousand dollars therefrom and invest the same as a fund out of which, and the income therefrom, my executors shall provide for her support and maintenance during her lifetime as above directed, and funeral expenses; and whatever may not be used and appropriated for that purpose, I give and bequeath as follows: If my daughters shall be both

living, one-half to each of them; if one daughter only shall be then living, one-half to her and the other half to the children of the deceased daughter; and if both daughters shall be deceased, then one-half to the children of one daughter and the other half to the children of the other daughter, and the balance (after deducting said $5,000) and the whole if said Mary Ann shall not survive the death or marriage of said Frances A., shall be divided into two equal parts, share and share alike, by my executors, and be disposed of as follows: 1st. If neither of my daughters shall be then living one of said half parts shall be paid to the children of said Mary W. and the other half to the children of said Ella W. 2nd. If one of said daughters shall be then living and the other deceased, then one of said parts shall be paid to the children of the deceased daughter, and the other half parts shall be invested and kept invested by my executors during the lifetime of such surviving daughter, and the income therefrom shall be annually paid over to her, and on her decease the principal shall be paid over to her children. 3rd. If both my said daughters shall be then living, then one of said half parts shall be set apart for and assigned to the children of Mary W., and kept invested by my executors during her lifetime and the income thereof paid over annually to said Mary W., and on her decease the principal of such half part shall be paid over to her children, and the other half part shall be set apart for and assigned to the children of said Ella W. and kept invested by my executors during her lifetime and the income thereof paid over annually to said Ella W., and on her decease the principal of such half part shall be paid to her children. It being my intention and will that my said daughters shall have and enjoy absolutely for their own property during their lives respectively, each one-half of the whole income of my estate from the date of my decease (subject, however, to the provisions and bequests in favor of my wife and sister, and all taxes, the expenses of executing the trusts herein created and all other legal charges and also excepting the real estate and use thereof devised to said Mary W. and

her children), but no part of the principal (except said $5,000, or the balance thereof which may remain after the decease of my sister Mary Ann), and that the principal (except said $5,000 or the balance thereof unexpended, and said devises in fee) shall be equally divided between the children of said daughters absolutely for their own property, subject, however, to the above-provided life estates in the same ; one-half to the children of Mary W., and the other half to the children of Ella W. And the receipts of said Mary W. and Ella W., respectively, for such income, shall be a sufficient discharge and voucher to my executors."

The appellant claims that, upon the death of her mother, she, by reason of the prior death of her brother Tracy, became entitled to one-half of the income enjoyed by her mother in her lifetime ; and that, after the death of her brother Howard, she, as the only surviving child, became entitled to the whole income ; and that, upon the death of her grandmother, the testator's widow, she will be entitled to the *corpus* of one-half of the whole of the trust estate, the children of Ella W. Parker being entitled to the other half. The surrogate held that, upon the death of the testator, his grandchildren by his daughter Mary took a vested interest in one-half of the estate, subject to the outstanding life estates provided for by the trust, and that his grandchildren by his daughter Ella W. took a like vested interest in the other half of the trust estate ; and that one-third of the net income thereof, after the death of her mother, belongs to the appellant ; one-third to Withington, as administrator, etc., of Howard L. Merriman, deceased, and one-third to Dwight Merriman, individually, as father and next of kin of Tracy W. Merriman, deceased.

It will at once be observed that the controlling question is, whether the estate vested in the grandchildren upon the death of the testator, subject to the outstanding life estates.

The statute provides that "future estates are either vested or contingent. They are vested, when there is a person in being, who would have an immediate right to the possession

of the lands, upon the ceasing of the intermediate or prece-
dent estate.   They are contingent, whilst the person to whom,
or the event upon which they are limited to take effect,
remains uncertain." (1 R. S. 723, section 13.)   Upon the
death of the testator the grandchildren were all in being;
under the will they had the immediate right to the posses-
sion of the estate upon the termination of the life estates.
Their estates were, therefore, vested at the time of the death
of the testator, unless there are some provisions of the will
making the persons to whom, or the events upon which the
estates are limited to take effect, uncertain.   Upon referring
to the provisions of the will, we find that the trustees are to
first pay out of the income of the trust estate the annuity to
the widow; they are then required to provide for the reason-
able care and support of the testator's sister; and all the bal-
ance of the income is to be paid to his two daughters, share
and share alike, and in case of the decease of either of the
daughters during the life of his widow "then and in such
case to pay the half share of said income to the children of
said daughter, which would have belonged and been paid to
the deceased daughter had she survived."   And then again,
in speaking with reference to the *corpus* of the estate, after
the terminations of the life estates provided for, he directs
his trustees to pay one-half of the estate to the children of
Mary W., and the other half to the children of Ella W.   It will
be observed that no words of survivorship are used, either in the
provision with reference to the income, or with reference to the
*corpus* of the estate.   Had he stated that the income, or the *cor-
pus* should be paid to the children then surviving, there would
have been reason for the contention that the persons who were
to take remained uncertain and could not be determined until
the time arrived at which the estate could be distributed.
He then concluded with a declaration of his intention, saying:
" It being my intention and will that my said daughters shall
have and enjoy absolutely for their own property during their
lives respectively, each one-half of the whole income of my
estate from the date of my decease,   *   *   *   and that the

principal   *   *   *   be equally divided between the children
of said daughters absolutely for their own property, subject,
however, to the above-provided life estates in the same.    One-
half to the children of Mary W., and the other half to the
children of Ella W." Here again we have an express pro-
vision declaring his intention to give the estate absolutely to
the grandchildren, without words of limitation as to the sur-
vivors, but subject to the outstanding life estates. How could
they take subject to the outstanding life estates if their estates
were unvested and contingent? If contingent, the persons
who would take would remain uncertain until the termination
of the life estates, and they would not be vested with title
until the happening of that event, and then they would take
absolutely, subject to no life estate.

Some question with reference to the word "estate" was
raised upon the argument.    As printed in the appeal book,
it is in the singular, instead of plural; but the meaning is
apparent; it could not well refer to any estate other than
that provided for in the will, and must, of necessity, relate
to the estates created thereby, whether it be one or more.

It is thus apparent that it was in the contemplation of
the testator that the remainder should vest in his grandchil-
dren, subject to the life estate or estates created by him, and
this, under the statute and rules of construction, would relate
back to the time of his death, and the vesting would be of
that date.

It is contended that a different intention is to be drawn
from the provisions of the will, providing that, after the death
or remarriage of his widow, his executors should convert the
mansion house and lot and other real estate remaining undis-
posed of into personal property, so that the whole estate
should become personal property, and that if his sister Mary
Ann should then be living, to set apart the sum of five thou-
sand dollars and invest the same for her support and main-
tenance during her life.    The sister has not survived the
widow; had she survived, some question might have arisen
with reference to the five thousand dollars set apart for her

use during life; but in view of her decease, no question can now arise with reference to the validity of that provision. It is true that an imperative power of sale, to be exercised at some future time, has been given as a reason for holding that it was not the intention that an estate should vest at the time of the testator's death. (*Dana* v. *Murray*, 122 N. Y. 604.) But in that case there were other provisions of the will which controlled the decision. An imperative power of sale is one of the facts which must be taken into consideration in determining the intention of the testator, and, when considered in connection with other provisions of the will, it may be an indication that it was intended that the estate should not vest until the imperative power of sale was exercised. But such a clause in a will does not necessarily prevent a vesting, especially when it is apparent from the other provisions of the will that it was intended that the estate should vest. An estate may vest subject to the execution of the power, which may be for the purpose of distribution only, the effect of which would be to transfer the title in the realty to the proceeds. The mansion house property formed no. part of the trust estate during the life of the widow; its use was given to her by an independent clause. She has survived both of the daughters, so the same can never come under the control of the executors for the purposes of the trust, and the only power they have over the same is the naked power of sale for distribution. Other real estate was, however, included in the trust; but, under the circumstances of the case, we fail to see any reason why the remainder did not vest in the grandchildren as of the date of the testator's death. It is true that it was subject to the power of sale, given to the executors, by the exercise of which it would become personal property; but this could make no difference, for the rules governing estates or interests in lands, whether founded upon statutes or general principles of law, are, so far as practicable, applied to estates or interests of a like character in personal property. (1 R. S. 773, section 2 See, also, *Mills* v. *Husson*, 140 N. Y. 99–104.)

If we are correct with reference to this construction of the will, the contention that the whole estate vested in the executors as trustees cannot be sustained. The trust estate doubtless did vest in the trustees, but the remainder was never given to them. The estate vested in them subject to the execution of the trust, which was limited in duration, and after its termination they were directed to divide among the grandchildren. This does not mean that they were the owners of the absolute fee, but simply so much of the estate as was put in trust and as was necessary to provide the income. The remainder of the estate, after the termination of the trust, was either vested or contingent, as we have shown, and the estate of the trustees was subject thereto. · (*Crooke* v. *County of Kings*, 97 N. Y. 421, 446–447; *Matter of Tienken*, 131 N. Y. 391, 401.)

A rule formulated in a number of cases is to the effect that where the only gift is found in a direction to divide at a future time, the gift is *future* and not immediate, contingent and not vested. (*Leeke* v. *Robinson*, 2 Mer. 363; *Warner* v. *Durant*, 76 N. Y. 133; *Smith* v. *Edwards*, 88 N. Y. 92.)

The appellant invokes this rule and urges that the will contains only a direction to divide and pay over the income and the *corpus* of the estate to the grandchildren, after the happening of the events specified in the will. This question was fully considered by this court in the case of *Goebel* v. *Wolf* (113 N. Y. 405) in which it was held that the general rule, when a testamentary gift is found only in a direction to divide at a future time, the gift is *future* and contingent and not vested, is subordinate to the primary canon of construction, that the intent, to be collected from the whole will, must prevail, and taking the whole will together, it was the intention that the children should each take a vested remainder, upon the death of the testator, in one-fourth of the residuary estate, dependent upon the termination of the trust; that the share of the one who died, with the accumulations of income therefrom, descends to his heirs or next of kin, according to the nature of the property, and that such descendants were entitled to any

income which may thereafter accrue during the trust period. We have already referred to the provisions of the will in which the testator declared his intention that the principal should be equally divided between the children of his daughters absolutely for their own property, subject, however, to the life estates created by the will, and to the construction which should be given thereto. This, we think, clearly takes the case out of the rule invoked and brings it within the rule adopted in the case of *Goebel* v. *Wolf* (*supra*).

It is further contended that the gift was to the grandchildren as a class, and, therefore, only those who answer that description, when the estate is to be turned over, can take. In legal contemplation a gift to a class is an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are to take in equal, or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number. (1 Jarman on Wills [5th ed.], 269 ; *Matter of Kimberly*, 150 N. Y. 90–93 ; *Manier* v. *Phelps*, 15 Abb. [N. C.] 123.)

Assuming, for the purposes of this case, that, at the time of the execution of the will, the gift to the grandchildren was to a class, it does not necessarily follow that their estates did not vest as tenants in common upon the decease of the testator, for, in the absence of a different intention disclosed in the will, the class will be ascertained and determined as of the death of the testator. Schouler on Wills, at section 529, says : " Our law, instead of supposing that a gift to objects thus brought together should include naturally all of that class who may fulfill the description at any time, presumes rather that the testator intended the class to be ascertained upon his death, and neither earlier nor later. Hence, a devise or bequest to children of A., or of the testator, means *prima facie* to those of that class in existence at the time of the testator's death, provided there be any at all to answer that description ; and this rule extends to grandchildren, issue, brothers, nephews and cousins. * * * In short, the disposition is to regard all testamentary gifts to members of a class

consisting of children, grandchildren, issue, brothers, nephews or cousins, as intending *prima facie* that class as it may exist at the testator's death, whether the effect be to reduce or extend the number of individual beneficiaries entitled to the fund." And again, in section 530, he says : " Hence the English rule, confirmed by many American precedents, that the devise or bequest of a *corpus* or aggregate fund to children as a class, where the gift is not immediate, vests in all the children in existence at the testator's death, but so as to open and let in any who may come into existence afterwards, at any time before the fund is distributable. And this rule of construction, like the former one, extends its favor to grandchildren, issue, brothers, nephews and cousins."

In 2 Jarman on Wills (168, 6th ed.) it is said : " Where a particular estate or interest is carved out, with a gift over to the children of the person taking that interest, or the children of any other person, such gift will embrace, not only the objects living at the death of the testator, but all who may subsequently come into existence before the period of distribution. * * * In cases falling within the rule the children, if any, living at the death of the testator take an immediately vesting interest in their shares, subject to the diminution of those shares as the number of objects is augmented by future births, during the life of the tenant for life, and, consequently, on the death of any of the children, during the life of the tenant for life, their shares (if their interest therein is transmissible) devolve to their respective representatives."

In the case of *Campbell* v. *Stokes* (142 N. Y. 23) the testator left him surviving six children and sixteen grandchildren. By his will he divided his residuary estate into as many shares as he had surviving children, and gave to each the income of one share during life, with the principal of such share, on the death of any child, to his issue *then surviving*. He thus contemplated the possible death of a child before his own death, leaving issue surviving, and in that case, such issue surviving at decedent's death, was to take absolutely the share of the deceased child. It was held that, upon the death of the tes-

tator, individuals of the class entitled to take a remainder were in existence and ascertainable, and that the issue of any child of the testator living at his death would take under the will a vested remainder. (See, also, *The Attorney-General* v. *Crispin*, 1 Brown's Ch. Rep. 386; *Matter of Tienken*, 131 N. Y. 391; *Stevenson* v. *Lesley*, 70 N. Y. 512; *Moore* v. *Lyons*, 25 Wend. 143; *Bowditch* v. *Ayrault*, 138 N. Y. 222; *Matter of Young*, 145 N. Y. 535; *Kent* v. *Church of St. Michael*, 136 N. Y. 10; *Embury* v. *Sheldon*, 68 N. Y. 227; *Surdam* v. *Cornell*, 116 N. Y. 305.)

Our conclusion, therefore, is, that the grandchildren of the testator took a vested interest in the trust estate at the time of the death of the testator, subject to the life estates created by the will, and that the income derived therefrom, after the death of the mother, follows the estate so vested and passes to the personal representatives of the deceased grandchildren.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.