bility of determining whether they were thus issued in aid of a rail-
road constructed under that act.  The notice was broad enough, it
seems to me, to cast upon even a bona fide purchaser the responsi-
bility of determining whether the road in aid of which these bonds
were issued was in fact a road constructed under the act of 1871 or
under the prior acts.   If I am correct in these views, and in the in-
ferences to be drawn from the facts hereinbefore reviewed, such pur-
chaser was chargeable with knowledge and notice of the fact that the
road was being constructed and was being built under the act of 1871,
and that the bonds were being issued in aid of such road.   Thomas
v. Town of Lansing, 21 Blatchf. 119, 129, 14 Fed. 618.   It has already
been held that there was no valid authority for so issuing them.   I
do not lose sight of the fact that Judge Blatchford, in the Thomas
Case, says, in substance, that while the line of the road in question
was unauthorized, and without authority as an Auburn branch, and
could not be considered such, it also could not be considered as being
built under the Western Extension act.   But from the facts cited by
him it would appear that some evidence presented in this case must
have been absent in that.   At any rate, the facts fairly indicate an
attempt to build it under the latter act, rather than under the former
ones.

The conclusions which I have reached upon this branch of the
case render it unnecessary to consider the defense of unconstitu-
tionality of the acts involved.

The defendant for a long time paid the interest upon these bonds.
It has, at various times, done various acts which recognize, rather
than deny, their legality.   It is urged that thereby it has made them
valid.   No element of estoppel has been established in favor of plain-
tiff; and while, if defendant, as plaintiff in an equity suit, were seek-
ing affirmative relief,—as to have the bonds declared invalid,—the
acts mentioned might furnish a good reason for denying such relief,
they are not sufficient in this suit to cure any jurisdictional defects
in the bonds.   So with the act to which I have been referred pur-
porting to cure any errors or omissions of certain kinds in the issue
of bonds such as these in suit.   It does not purport to and could not
remedy the difficulty which I have found to exist in this case.   Find-
ings may be prepared in accordance herewith, and, if not agreed upon,
may be settled at any time upon three days' notice.

Ordered accordingly.

(28 Misc. Rep. 273.)

### In re BROWN et al.

(Surrogate's Court, New York County.   June, 1899.)

WILLS—VESTED REMAINDER—WORDS CREATING.

Decedent gave his entire estate to his executors, in trust to pay his wife
the income during her life or widowhood.   Then follows the clause: "I
further direct that, in case of her death, or in case she should marry, then
I direct my said executors hereinafter named to divide my said estate,
real and personal, into five equal parts or shares, and that the same be
paid over to my children, as follows:  To my daughter A., one-fifth part;
to my son J., one-fifth part; to my daughter C., one-fifth part;  to my

daughter M., one-fifth part; to my son R., one-fifth part,—my intention being to give each of my said children share and share alike." *Held,* that the gifts to the five children vested at the death of decedent.

Proceedings on the settlement of the account of James Brown and William H. Byrnes, as trustees of John Pauley, deceased. Decree rendered.

Frederick G. Smedley, for trustees.
J. Noble Emley, for objectors.

VARNUM, S.    This is one of the undecided matters of Judge Arnold.    Decedent gave his entire estate to his executors, in trust to pay his wife the income thereof during her life or during her widowhood.    Then follows this clause:

"I further direct that in case of her death, or in case she should marry, then I direct my said executors hereinafter named to divide my said estate, real and personal, into five equal parts or shares, and that the same be paid over to my children, as follows:  To my daughter Ann Jane, one-fifth part; to my son John Joseph, one-fifth part; to my daughter Mary Cecelia, one-fifth part;  to my daughter Margaret, one-fifth part;  to my son Robert Lawrence, one-fifth part,—my intention being to give each of my said children share and share alike."

The wife and all of the children survived the decedent.  Three of the children predeceased the wife.  The question now arises as to whether the above provision gave the five beneficiaries vested remainders, or whether the gifts were only to take effect upon the death or remarriage of testator's widow.  Naturally, in the latter event, the entire estate would belong to the two children who survived their mother.  It is contended that the words used in the will bring this case under the rule which holds that, where a gift consists wholly in a direction to make a division at some future time, there can be no vesting until such time arrives.  Delafield v. Shipman, 103 N. Y. 467, 9 N. E. 184.  This rule was thoroughly analyzed in the recent case of In re Elliott's Estate, 27 Misc. Rep. 258, 58 N. Y. Supp. 603.  It was there pointed out that this canon of construction was not a hard and fast one, but that it readily yielded to the intention of the testator as gathered from the will, and that in the cases where a future division is directed, coupled with words of present gift, the latter govern, and the gift is construed as being immediately vested.  It was also shown that, where the courts have held that the vesting is postponed, there is not only an absence of language importing an immediate gift, but other circumstances are usually present which are largely determinative in bringing about the decision.  Indeed, the courts have gone so far as to refuse to apply the rule in question, even where the direction to divide is made most imperative.  Thus, in the case of In re Hedger's Estate (Sur.) 6 N. Y. Supp. 769, affirmed (Sup.) 9 N. Y. Supp. 347, the testator, after creating a life estate in his wife, gave the remainder to certain named beneficiaries, and directed that "such devises and bequests are to take effect, and such division of my estate is to be had, after the decease of my said wife."  It was held that the intention here was well defined, that the gifts were certain as to quan-

tity and as to the objects of the testator's bounty, and that the remainders were, therefore, vested, and not contingent. See, also, Ross v. Roberts, 2 Hun, 90, affirmed 63 N. Y. 652. It will be observed that in the present case the gifts are not made to a mere class,—a disposition which might be indicative of an intention to give benefits only to those who belonged to it at the time distribution is directed. In re Baer, 147 N. Y. 348, 41 N. E. 702. The beneficiaries are distinctly named, thus showing that the testator's scheme was to fix at once the persons who were to take, and not to leave the matter to future contingencies. Carr v. Smith, 25 App. Div. 214, 49 N. Y. Supp. 351. The decisive words which, to my mind, make it evident that the decedent intended to create vested remainders, are contained in the declaration of intention, which conclude the clause above quoted, namely, "it being my intention to give each of my said children share and share alike." These words are equivalent to the creation of a gift by present words. They are as effective as if the decedent had said in so many words, "I do hereby give to each of my said children an equal share in my estate." I am asked to disregard this declaration of testator, as being merely iterative of what precedes it. It seems to me that, so far from being colorless repetition, these words shed the clearest light on the question at issue. They give marked emphasis to the purpose of the testator (In re Brown, 154 N. Y. 313, 322, 326, 48 N. E. 537), and in the present case show that an immediate gift was intended. This being so, I hold that the gifts to the five children above named vested at the death of the decedent. The decree should provide for distribution accordingly.

Decreed accordingly.

---

PEOPLE v. WADE.

(Special Sessions of First Division of City of New York. March, 1899.)

GAMBLING—WHAT CONSTITUTES.
    Where the evidence showed that defendant carried on the business of selling stocks on prices marked on a blackboard from a stock-quotation ticker, and that there was no purchase of stock by defendant to fill orders received, and no delivery of stock was ever made or contemplated between the parties, and the losses of a customer were limited to the amount of his deposits as a margin, and the fluctuating prices on the ticker alone determined the quotation of profit or loss, it constituted gambling, within Pen. Code, § 343, as amended by Laws June 11, 1889, c. 428, making wagers on dealings in stocks and securities a misdemeanor.

Henry C. Wade was convicted of keeping a betting establishment.

Asst. Dist. Atty. O'Reilly, for the People.
E. Y. Bell, for defendant.

PER CURIAM. The defendant is charged with the violation of section 343 of the Penal Code, which makes it a misdemeanor to keep a gambling and betting establishment. The transactions complained of as constituting gambling were based wholly upon the fluctuations of stock dealt in by the New York Stock Exchange. The defendant carried on business at No. 50 New street, New York, under