## SECOND DEPARTMENT, JANUARY, 1972

### (January 3, 1972)

■  In the Matter of the Estate of ORVAR HYLIN, Deceased. FIRST NATIONAL CITY BANK et al., Respondents; FRANCIS J. FITZPATRICK, as Executor of DOROTHY G. HYLIN, Deceased, Appellant.

MEMORANDUM.  In a proceeding by the trustee under the testator's will to settle its account and for construction of the will, the appeal is by the executor of the estate of the testator's widow from so much of a decree of the Surrogate's

Court, Westchester County, dated June 25, 1971, as construed the will and directed distribution to be made pursuant to said construction.

Decree affirmed insofar as appealed from, with costs to all parties filing separate briefs, payable out of the estate. No opinion.

SHAPIRO, J. (dissenting). The issue here is whether the Surrogate correctly construed the provisions of the will of Orvar Hylin, who died on August 21, 1935. He was survived by his widow, Dorothy G. Hylin, and his infant son, Orvar Ragnar Hylin, Jr. The son was 3 years old on March 7, 1929, when the will was executed. He was 9 years old at the time of his father's death and 19 years old when he died unmarried and without issue on December 11, 1944.

### THE FACTS

Paragraph "Third" of the will left $12,000 to the trustees named in the will, the income of which was to go, in equal shares, to the testator's mother, Estrid Hylin, and his sister, Karin Marget Hylin, during their joint lives, with survivorship, and upon the death of the survivor the principal of that fund was to go to the testator's wife " or in the event of her prior decease then to my issue, per stirpes and not per capita."

Paragraph "Fourth" gave the rest of the testator's estate to his trustees, to be divided in two equal shares. The income out of the first, under subparagraph (a), was to go to the testator's wife for life or until her remarriage. Upon her decease or her remarriage the trustees were directed " to pay over the principal of such trust fund to my issue, per stirpes, and not per capita, and in default of such issue" to pay the principal over " in equal shares to and among" the testator's brother (named) and his sisters (named). This provision went on: " If at the time of the death of my wife, or, in the event of her remarriage, at the time of such remarriage, my brother or either of my sisters shall have died leaving issue then surviving, then I direct that the share of such deceased brother or sister shall be paid over to such issue, per stirpes and not per capita; in the event that my brother or either of my sisters should predecease my wife, or, in the event of her remarriage should die before the date of such remarriage, and should not leave issue him or her then surviving, then and in either of those events I direct that the share of such deceased brother or sister shall be divided equally among the surviving sisters or brother, as the case may be, and the issue of any deceased sister or brother, said issue to take their parents' share collectively per stirpes and not per capita."

The second half of the balance of the estate was to be divided, under subparagraph (b) of paragraph "Fourth", into as many shares " as I shall leave children me surviving." The income therefrom was to be used, as necessary, for the maintenance, support and education of the child for whose benefit each share was to be held in trust, with the balance of such income accumulated until the child reached 21, when the child was to receive such accumulation; and the income thereafter was to be paid to each child until the child reached 25, when the child was to be paid one-half of the then principal. The income from the balance was to be paid to the child until age 30, at which time the principal was to be distributed to him. In the event that any such child were to die before receiving the entire principal of his or her share, the trustees were directed to pay over the balance of the principal and accumulated income, in equal amounts, to the children of such deceased child, " and in default of such children, then to my issue, per stirpes and not per capita." In the event the testator were to die leaving no issue him surviving, this fund was to be disposed of " in the same manner " as provided for the other half, in subparagraph (a). The testator's

wife and a friend were named the executors and trustees and, if either failed to qualify or continue to act as such, the predecessor of the current trustee, the National City Bank of New York, was named as substitute.

The testator's sole issue, his son, Orval Ragner Hylin, Jr., died intestate without spouse or issue. Thereafter, the testator's widow, the life tenant, was duly appointed administratrix of the estate of her son and in her capacity as such executed and delivered to herself an assignment of all of the interest of her son's estate in the trust created under paragraph "Fourth (a)" of her husband's will. She died possessed of the rights and interests conveyed by that assignment.

### THE LAW

The issue here is whether the son's rights to the trust fund created under paragraph "Fourth (a)" of his father's will, the remainderman's rights after his mother's life estate, vested in him at the time of his father's death so that it passed from him to his mother, his sole heir, as part of his estate when he died without issue or spouse, or whether his remainder was contingent on his, or his issue, surviving his mother. If it was the latter, then, since the contingency did not occur, the gift over to his uncle and aunts or their issue became effective and the principal of the trust would go to the surviving issue of the brother and sisters, per stirpes. The Surrogate ruled, in my opinion erroneously, that the son had a contingent estate only and that when he died before his mother the share that was to go to him vested in the then surviving issue of the testator's brother and sisters. The Surrogate based his determination on the fact that the gift of the remainder to the testator's issue "per stirpes, and not per capita," with a gift over "in default of such issue," was a gift of the remainder to a class and that in the case of such a class gift the persons constituting the class were to be determined at the time of distribution or division.

The determining factor in all will construction proceedings is the intent of the testator *as expressed in the will.* All canons of interpretation are subordinate to this consideration (*Matter of Larkin,* 9 N Y 2d 88, 91). *In my opinion the will in this case reveals no intent by the testator to make the claim of his issue, if he left any issue him (the testator) surviving, contingent on their surviving his wife's life estate.* Only if the testator left no issue *at the time he died,* issue which presumably would continue his direct blood line, did he direct that his money, the trust fund, go to his brother and sisters or their issue. It seems clear to me from the language of the gift over to his brother and sisters, or their issue, that that gift was a future and contingent one, to take effect only if he left no issue at the time of his death. But although he used language clearly making this gift over conditional on the default of issue of his own, without specifying when the default was to be ascertained, he went on to specify that the issue of his brother or sisters should take only "if at the time of the death of my wife" the brother or either of his sisters had "died leaving issue then surviving." The overt omission to attach the same limiting specification to the gift over to his own issue fairly requires the conclusion that he did not intend to postpone the determination of whether he had issue surviving him to the date of his wife's death or remarriage, but wished it determined, as is ordinarily the case under established law, by the situation as it existed at the time of his death.

A reading of the will, it seems to me, underlines the correctness of this conclusion. The testator's goal was twofold. First, to insure that his estate went ultimately to his issue and, second, to secure his wife's support for her lifetime or until her remarriage. There is no indication that he had any intention to bar his wife from controlling the further distribution of his estate if his issue surviving him did not survive her.

My conclusions, in this regard, are supported by paragraph "Third", in which the testator provided that the principal of the trust fund there established for his mother and one sister was to go, on their death, to his wife and, if she were not alive, to his issue and not into the trust fund set up in paragraph "Fourth (a)". His reservation of one half of his estate for his issue, with a gift over to the trust established in paragraph "Fourth (a)" only if he died without issue, also supports this conclusion. Furthermore, the testator named his wife as a trustee of both the trust fund for her own maintenance and the trust fund for his issue in paragraph "Fourth (b)", giving her uncontrolled discretion with the cotrustee to determine how much of the income should be paid over and how much accumulated and to advance principal to the children, the testator's issue, who were to be beneficiaries of that trust fund. This is hardly consistent with the intent which the court below read into the will to limit the wife's interest to a life interest. *It is far more consistent with an intent on the part of testator to vest the interest of his issue at his death and to make a gift over, after his wife's life estate, to his brother and sisters or their issue, only if he left no living issue when he died.* To bar the wife's devisees from taking, as the Surrogate did, requires the court to infer an intent by the testator to limit his wife to a life estate and to bar her from playing any role in the distribution of his estate during her life. Such an intent might seem reasonable if she denied the testator any issue living when he died, or if the testator's will manifested a distrust of her ability to manage his estate; but the provisions referred to showing the testator's clear preference for the inheritance of his entire estate by his issue, if he left any, and entrusting his wife with the cotrusteeship of all the trusts created in his will strongly negate either conclusion.

The Surrogate based his holding below on *Matter of Baer* (147 N. Y. 348). In my opinion he erred in so doing. That case involved the validity of title to certain real property in which the interpretation of a will was of relevance only because the issue of good title turned on it. Hence the true parties in interest, the competing claimants under the will, were not involved in presenting arguments to the court on the issue of vesting or contingency of the remainder interest. Furthermore, the identity of the remaindermen involved in *Matter of Baer* could not be determined prior to the termination of the trust. They were the "children and lawful heirs" (p. 353) of the testatrix' brother, who took only after a life estate to one daughter, with the remainder to her issue, and a second life estate to a second daughter if the first daughter were to die without issue. The first life tenant died without issue in 1885. The second life tenant died in 1893. The testatrix' brother was then dead but he had left 10 children, all alive at the time the testatrix died in 1849. All 10 children were dead before the first life tenant died, some leaving wills and some dying intestate. The real property which was part of the trust was then the subject of a partition action in which all the living heirs of the testatrix' brother were made parties and they were bound by the judgment therein. This did not include devisees of those of the brother's children who had left wills. The issue was whether this foreclosed devisees other than the living heirs. While the court in *Baer* did say: "Where final division and distribution is to be made among a class the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made" (p. 353), it qualified that statement by adding: "In such cases the gift is contingent upon survivorship, and if it vests at all before the date of distribution it is subject to be divested by the death before that time of a person presumptively entitled to share in the distribution. *While this rule is sometimes made to yield to indications of a contrary intent in the will,* yet it may be said to be a general rule

and there is nothing to be found in the will in question to prevent its full application " (p. 354; italics added).

Following up on this finding of no intent in the will to cause vesting before the date of distribution, the court found that the intent of the testatrix was: " that upon the death of the daughters, for whose benefit the trust was created, without issue, the remainder should be distributed among such of the children ·of her brother as might then be living, and the lawful heirs of such as might be dead, and all the persons who answered to that description at the time of distribution having been made parties to the action of partition and become bound by the judgment, the title tendered was good and marketable " (p. 355).

The court also gave a third ground for its holding for the respondents: " Nor do we think that the title was involved in so much doubt, within the meaning of the rule, as to justify the purchaser in refusing to perform; and, moreover, the courts below have exercised their discretion in that respect, with which we ought not to interfere " (p. 355). There is another reason why *Baer* is not a binding authority for the rule for which it is cited by the Surrogate that, where final division and distribution is to be made among a class, the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution is directed to be made. That reason is that the rule, if applied generally, would nullify the doctrine repeatedly declared by the courts of our State that " The law favors the vesting of states, and, unless à contrary intention is unequivocally expressed, it will not be imputed " (*Matter of Watson*, 262 N. Y. 284, 300; see, also, *Connelly* v. *O'Brien*, 166 N. Y. 406). In the latter case the Court of Appeals said: " A remainder is not to be considered as contingent in any case where it may fairly be construed to be vested, since the law favors the vesting of estates " (p. 408).

The application of *Baer* here also contradicts the doctrine that courts regard all testamentary gifts to members of a class consisting of children, grandchildren, issue, brothers, nephews or cousins as intending, prima facie, that class as it may exist at the testator's death, whether the effect be to reduce or extend the number of individual beneficiaries entitled to the fund (*Matter of Brown,* 154 N. Y. 313, 326). In this case there is, first, the class of the testator's surviving issue, which consisted of his only son at the time of his .death, with the gift of a remainder after the wife's life estate in no way limited in terms of the time of vesting, and, second, the class consisting of the issue of any of the testator's brother or sisters who predeceased the testator's wife, who would take if there were no issue of the testator living, but would take only if their parent were dead at the time the testator's wife died and, presumably, the testator had died without issue. As to the first class, under *Matter of Brown* (*supra*), the surviving issue of the testator, its interest would vest at the time of the testator's death, absent specific language indicating the testator's intent to postpone vesting or make the remainder to his issue defeasible in case of failure to survive the life tenant. There is no such language in the testator's will and, therefore, the interest of the class, consisting of one person, the testator's son, vested at the time of the testator's death.

In *Matter of Ackley* (278 App. Div. 702) this court dealt with a similar question. There a remainder, after a life estate to the testator's wife, was given to the testator's sons, both of whom had survived the testator, one of them predeceasing the life tenant. The testator had created a trust the income of which was to go to his wife for life or until her remarriage, with the principal to be paid in equal shares to the testator's children and the issue of any deceased child, per stirpes and not per capita. The Surrogate had found the remainder to the testator's sons to be contingent, not vesting at the death of the testator.

This court reversed, citing *Connelly* v. *O'Brien* (166 N. Y. 406, *supra*) and several other cases in the same line of authority, saying (pp. 702–703) : " The direction in the will that upon the death of the life beneficiary the principal of the trust be paid in equal shares to the children and the issue of any deceased child, served to vest in each of the two children of the testator a vested share of the remainder upon their surviving the testator." The respondent's brief in *Ackley* cited *Baer* (*supra*) and stressed its applicability. It is apparent that though called to its attention this court considered *Baer* to be inapplicable.

The other cases cited and relied on by the respondents involved testamentary provisions which affirmatively manifested an intent by the testator to postpone vesting until the termination of the prior estate. Thus in *Matter of Gautier* (3 N Y 2d 502, 508), Judge FULD, speaking for the court said:

" The testator, thus indicating a clear-cut intention to postpone vesting until the termination of each trust, created a remainder contingent upon survival of the life beneficiary.

" We would strain language and do violence to the meaning of words were we to read the provision otherwise and ascribe to the decedent a different intention."

In *Matter of Larkin* (9 N Y 2d 88, 90, *supra*) the Court of Appeals said: " We agree with the Surrogate. It was the testator's manifest intention that there should be a gift over to the descendants of the remaindermen in the event that the remaindermen were not living at the time of distribution, i.e., *death of the life tenant.*" Similarly in *Matter of Gulbenkian* (9 N Y 2d 363) the Court of Appeals found that language giving the remainder of a trust fund, the income of which went for life to the testator's wife, " ' to my brothers Badrig Gulbenkian and Harutune Gulbenkian, in equal shares and their several descendants *per stirpes* ' " (p. 368) showed the testator intended a substitutionary gift if his brothers failed to survive the life tenant. Otherwise, said the court, the words " ' their several descendants, *per stirpes* ' " (p. 370) would be surplusage and the testator would have stopped after the word " shares " (p. 370). The court also noted that the testator had other clauses in the will which dealt with the contingency of a demise by a remainderman prior to distribution and yet in this instance failed to use established words which he knew would surely create an indefeasible gift.

The language of the will we are here construing in no way indicates " a clear-cut intention to postpone vesting until the termination of ° ° ° [the] trust " (*Matter of Gautier, supra*, p. 508); nor does it show " the testator's manifest intention " (*Matter of Larkin, supra*, p. 90) that there should be a gift over if there were none of his issue living at the time of death of the life tenant; nor is there any language showing the testator intended a substitutionary gift to his brother and sisters or their issue if his own issue failed to survive his wife. Hence none of these three cases supports the conclusion reached by the majority.

The holding that the testator's son's interest did not vest but was contingent on his surviving his mother's life estate runs athwart of still another presumption recognized by the law, that testators favor lineal descendants and rarely desire or intend to cut off such descendants from inheriting (*March* v. *March*, 186 N. Y. 99, 103; *Matter of Farmer's Loan & Trust Co.*, 213 N. Y. 168, 175). In the latter case CARDOZO, J., said (p. 175), " Having in view the rule that favors the keeping of the gift within the primary line of descent, we think that by the gift to issue in the fourth subdivision of the will, there was intended a gift to the descendants *per stirpes.*" The following language from *Matter of Wallace* (189 Misc. 473, 476) is most relevant with respect to this presumption:

" The authorities first above cited are founded upon the presumed intent of the testator in the absence of a contrary indication. They hold that as a matter of policy the law favors early vesting. * * * This is in aid of marketability of property, and is also to avert intestacy. In the instant case a holding that the remainder does not vest until the death of the life tenant * * * would result in depriving the testator's grandson by his deceased son of any share in this estate. The law favors lineal descendants, and we cannot assume that the testator wished to cut off this grandson, nor can we reach such result by adding words to the will which the testator did not place therein."

The intent of the testator must be found in the language of the will and the situation as it existed at the time the testator died, not on the basis of hindsight in 1944 when his son died at 19 without issue in a war the testator could not possibly have foreseen. Nor may the testator's interest toward his wife and issue be determined by the failure of the testator's issue nine years after the will became effective. Rather his intent must be ascertained in the light of the situation that existed when the will was written and at the time of the testator's death, when it appears that his intent was to honor, care for, and trust his wife, as his widow and the mother of his then surviving son, by reserving for her a life estate in half his estate, plus the remainder interest in the life income trust for his mother and sister, and insuring that his issue would receive his entire estate.

I would therefore reverse that part of the decree of the Surrogate which construed paragraph " Fourth (a) " of the testator's will as barring the heirs of the testator's widow, Dorothy Hylin, from receiving the principal of the testamentary trust established thereunder and would direct that the executor of her estate be granted the relief prayed for by him.

Rabin, P. J., Munder and Martuscello, JJ., concur in memorandum. Shapiro, J., dissents and votes to reverse the decree insofar as appealed from and to grant relief to the executor of the estate of Dorothy Hylin as prayed for by him, with an opinion, in which Latham, J., concurs.

Decree affirmed, etc.