(54 App. Div. 456.)

DOUGHERTY et al. v. THOMPSON et al. (two cases).

(Supreme Court, Appellate Division, First Department. November 16, 1900.)

1. WILLS—GIFTS—VESTED INTEREST.

Under a will giving a life estate in land to B., nephew of testator, and, on death of B., giving the property to trustees to receive the income during the life of C., son of B., and to apply one-half thereof to the use of C., and the other one-half "to apply, during the whole of said term, to the use of all the other grandnieces and grandnephews of mine in equal shares, the issue of any deceased taking their parent's share," and on the death of C. to sell the property, and distribute the proceeds among all testator's grandnieces and grandnephews in equal shares, the issue of any deceased grandnephew or grandniece taking his or her parent's share, a grand-

nephew or grandniece has no vested interest in the income or the remainder, so that he or she, dying without issue, during continuance of the trust, cannot dispose of it by will or otherwise.

2. SAME.

Under a will giving money to trustees to apply annually $700 of the income to the use of W., testator's nephew, and the residue of the income to the use of J., wife of W., and their children, by paying the same to her for the support of herself and them during their minority, and, as each child became 21 years old, he or she to be entitled to receive one equal share of the surplus, to be determined by dividing it into one more share than there shall be children of W. and J., J. to be entitled to receive one of such shares for her own use during her life, after all the said children shall become 21 years old, and on the death of W. and J. the trust property to be paid over to their children, and, if any of them shall have died leaving issue, such issue to receive their parent's share, a child of W. and J. has no vested interest in the income or the remainder during the life of W. or J., so that dying without issue after becoming 21 years old, and after the death of W., but before death of J., he cannot dispose of it by will or otherwise, but it will thereafter be divided as though he had never existed.

Hatch and Rumsey, JJ., dissenting.

Appeal from special term, New York county.

Action No. 1, by J. Hampden Dougherty and another, trustees under the will of William D. Thompson, deceased, against Josephine L. Thompson and others, for construction of the ninth clause of the will of deceased; and action No. 2, between the same parties for the construction of the third clause of the will. From the judgments (59 N. Y. Supp. 608), certain defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Levi S. Tenney, for appellant Nina O'Donnell.

William T. Tomlinson, for appellant Marie Louise Norris.

Eustace Conway, for appellants John C. Thompson and others.

Charles E. Lydecker, for appellants Richard H. Thompson and Mary R. Thompson.

Charles C. Hoge, for respondents Dougherty and another.

Henry B. B. Stapler, for respondent Josephine L. Thompson.

## Action No. 1.

INGRAHAM, J. This action was brought for a construction of the ninth clause of the will of William D. Thompson, deceased. The testator died in the year 1874, unmarried, and without issue. He left a large estate, and when the will was made had no brother or sister living. He had, however, certain nephews and nieces, the children of a deceased brother, who upon his decease would be his heir at law, and it was these nephews and nieces, and his grandnephews and grandnieces, that were to receive his estate. The testator's general scheme seems to have been to give a life interest in his property to his nephews and nieces, the fee of the estate upon the death of his nephews and nieces to go to his grandnephews and grandnieces. A consideration of the whole will, from which the intention of the testator is to be determined, indicates that it was the grandnephews and grandnieces that he intended should ultimately have his property. Most careful provisions were made to prevent

his estate from being dissipated by his nephews and nieces.  His nephews and nieces were to receive an income for their support during their lives, and upon the termination of these life estates the corpus of the estate was to be distributed between those who occupied to him the relation of grandnephews and grandnieces; and the will is peculiar, in that these grandnephews and grandnieces are not named as individuals when disposing of the ultimate remainder of the estate, but where such an ultimate remainder is disposed of the disposition is to his grandnephews and grandnieces, indicating it was the class who occupied that relation that he had constantly in mind when he designated the persons to whom the estate should ultimately go rather than to any particular individual. There were several clauses in this will creating separate trusts for persons specifically named.  The will shows that the testator had in mind the necessities and claims upon his bounty of his nephews and nieces.  The provision made for them was not equal, and he evidently considered the claims and necessities of each, and determined what portion of his estate should be applied to their use; but when he comes to direct the distribution of the remainder of the trust estates provided for by the ninth clause of the will he seems to be guided by a different principle, intending substantial equality as between the grandnephews and grandnieces, directing that this property be distributed among them in equal shares.  It is to his grandnephews and grandnieces as a class, to those generally who occupied that relation to him, who are the object of his bounty, not to any particular grandnephew or grandniece to whom he desires that this portion of his property should go.  In this connection, attention should be called to the twelfth clause of the will, where provision is made for the death of either of his nephews or nieces during his lifetime.  Considering, therefore, this general intention of the testator, we turn to the ninth clause of the will, which is the one to be construed in this action.

By this clause the testator disposes of a piece of property, No. 139 Broadway, New York City, of considerable value.  He gives a life estate in this property to his nephew John B. Thompson, and upon his death he gives the property to his executors in trust, to receive the income thereof during the life of John C. Thompson, the son of John B. Thompson, and to apply the same as follows: "One-quarter to the use of the said John C. Thompson, and one-quarter to the use of his mother, the wife of the said John B. Thompson;" and, in case of her death during the said term, then to devote the one-quarter of the income payable to her to the use of the said John C. Thompson, and the other half of the said income "to apply during the whole of said term to the use of all the other grandnieces and grandnephews of mine in equal shares, the issue of any deceased taking their parents' share."  John C. Thompson, the grandnephew of the testator, was thus given either a quarter or a half of the income of this property after the death of his father.  This is the single instance in the will in which a grandnephew or a grandniece is mentioned by name, and this trust was to continue during the life of John C. Thompson.  There could be during that time

no sale of this property. It was to be held in trust by the trustees. The rents and profits were to be collected by them. One half of such income was to be paid to John C. Thompson and his mother. The other half of this income the trustees were directed to apply during the whole of such term to "the use of all" the other grandnieces and grandnephews in equal shares, and then, having in mind a contingency that might happen, viz. that one or more of these grandnephews and grandnieces should die during the continuance of the trust, the testator directs that, if the grandniece or grandnephew so dying should leave issue, the income that would be payable to the one so dying should be paid to his or her issue. That this direction to apply this income "to the use of" his grandnephews and grandnieces was not a vested gift of income to any particular individual seems clear. It was these grandnieces and grandnephews as a class—those that occupied that relation to him when the income was to be distributed—that he intended should receive such income, and not the executor or legatee of any grandnephew or grandniece dying during the continuance of the trust without issue. The element of survivorship was in his mind as the persons to whom this income should be payable. If he had understood that such income could be disposed of by the last will and testament of either of his grandnieces or grandnephews, the provision for a devolution of the income upon the death of either of them leaving issue would have been quite unnecessary. That was only essential, because, as the testator understood that he had provided that this income should go to the class or to those occupying the position of grandnephew or grandniece during the continuance of the trust, it was necessary, if he wished that, in case either of them died leaving issue, the issue should stand in the parents' place, that provision should be made for that contingency.

In this connection, it is important to consider the language used in giving this income. The trustees are directed to "apply, during the whole of said term, to the use of all the other grandnieces and grandnephews, in equal shares." Here is not a direct gift of the income to each grandniece and grandnephew living at the time the trust estate commences, but a direction to apply the income to the use of the grandniece and grandnephew during the whole term that the trust was to continue. Certainly a payment of a portion of this income to the legatees or next of kin of a grandnephew or grandniece would not be applying the income to the use of the grandnephews and grandnieces. This is an entirely different provision from the usual provision "to pay to" or other similar term used when an income is specifically given to a beneficiary named, and this direction had no relation to the time of the testator's death, because the trust estate from which this income was to be received was to commence, not upon his death, but upon the death of his nephew, to whom he had given a life estate in the property; and the direction to the trustees to apply one-half of the income of this property to his grandnephews and grandnieces was, by the express provisions of the will, to continue during the whole of the trust term.

When we look at the distribution that the testator directs upon the termination of the trust, we see that the same intention pervades the disposition of the remainder. He makes no present bequest to any grandnephew or grandniece, but he directs his trustees to sell, and to distribute the proceeds among his grandnephews and grandnieces, and then follows the same provision as to the disposition of the proceeds of this sale as was contained in the disposition of the income, that the issue of any grandniece or grandnephew dying before the time when this disposition was to be made was to take the share of the parent dying. Thus, it seems to me that to hold that either one of these grandnephews and grandnieces is vested with an interest in these rents or in the remainder of this property, which he could convey or dispose of by will, would be to defeat the clear intention of the testator as to those who he intended should be benefited by the income of this property, and by the distribution of the remainder upon the termination of the trust,—an intention that is expressed in the whole will, and which, it seems to me, is clearly crystallized in this clause now under consideration. In determining the intention of a testator, as has been often remarked, reference to decided cases is generally of but little advantage, as in each case the circumstances existing at the time of the making of the will and the language used by the testator are controlling in determining his intention, but I think the authorities bear out the construction that I have indicated. The conclusion arrived at in Clark v. Cammann, 160 N. Y. 323, 54 N. E. 710, sustains this conclusion. There the sum of $10,000 was left to the use of the testator's niece for and during her natural life, "and from and immediately after her decease, upon trust to pay over and divide the said principal sum of $10,000 unto and among all her children, share and share alike, and to their lawful representatives forever, as tenants in common, per capita, the issue of any such child who may then be dead to take his or her deceased parent's share." In that case the court, after discussing In re Brown, 154 N. Y. 313, 48 N. E. 537, said:

"In the will we now have under consideration the provision materially differs. 'And from and immediately after her decease, upon trust, to pay over and divide the said principal sum of $10,000 unto and among all her children, share and share alike.' Had the testator stopped here, we should have regarded this will to be in substance the same as in the Brown Case, and should not have hesitated to hold that the legacies vested in the sons. But the testator proceeds, 'and to their lawful representatives forever, as tenants in common, per capita, the issue of any such child who may then be dead to take his or her deceased parents' share.' Here we have an express provision of the will which seems to negative the claim that the estate vested in the sons. The testator apparently understood that it might happen that the sons would not survive his widow or their mother, and therefore undertook to provide for such a contingency by giving the estate to the issue of the sons in case of their death. If the estate was intended to vest in the sons, then, upon the death of either of them, the estate would pass to their executors or administrators, and might never reach the issue of such deceased child; but here we find, seemingly, an intention disclosed that the issue of the deceased child should take, rather than the executors or administrators. It is contended that the words, 'and to their lawful representatives forever,' are used as words of succession or substitution, and not of limitation. We are aware that the words, 'lawful representatives,' are often intended to mean executors and administra--

tors; but to so construe the words in this case would not only render meaningless the provision which follows, but would, as we have shown, be in conflict with the testator's evident intention of having the estate go to the issue of the sons, should they die during the lifetime of their mother."

And the court then continues:

"The view that we entertain of this will is that the testator intended the estate to go to the issue of the sons of Mrs. Gillespie in case of the death of either during the existence of the life estate. No issue of these sons were in being at the death of the testator, and it was uncertain as to whether they would ever have issue. The remainder was therefore contingent, and not vested, for the reason that the persons to whom, or the event upon which, the estate was limited to take effect remained uncertain until the termination of the life estate. Futurity was annexed to the substance of the gift, and the vesting was suspended."

In Re Brown, supra, in which it was held that the estate vested, the court held that it was clearly the intention to give the estate absolutely to the testator's grandchildren, without words of limitation as to the survivors, but subject to the outstanding life estates; but in this case we have no such intention expressed, but we have what seems to me to be a contrary intention.

We think, also, that this conclusion is further sustained by the case of Fargo v. Squiers, 154 N. Y. 250, 48 N. E. 509; McGillis v. McGillis, 154 N. Y. 532, 49 N. E. 145; and In re Baer, 147 N. Y. 348, 41 N. E. 702. In this case the court says:

"Where final division and distribution is to be made among a class, the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made. In such cases the gift is contingent upon survivorship, and, if it vests at all before the date of distribution, it is subject to be devested by the death before that time of a person presumptively entitled to share in the distribution. While this rule is sometimes made to yield to indications of a contrary intent in the will, yet it may be said to be a general rule, and there is nothing to be found in the will in question to prevent its full application."

As in the case of Delaney v. McCormack, 88 N. Y. 174–183:

"The case, therefore, falls within the rule that where the gift is money, and the direction for the conversion absolute, the legacy given to a class of persons vests in those who answer the description. Adding to these considerations the incongruity of a construction which would include James himself among the next of kin in the testator's mind and intention, we are entirely clear that the courts below correctly decided that the next of kin entitled were those who answered that description at the date of the distribution."

This incongruity would exist in this case; for if this legacy vested in John C. Thompson, who was to have a quarter or half of the income during his life, he would be entitled to a distributive share of the proceeds of the property, although such distributive share was not to come into being until after his death.

A further discussion of the cases upon this question would seem to be unnecessary. As before stated, each particular will has to be construed by a consideration of its own provisions and the conditions existing at the time the will was made. Giving to this provision of the will most careful consideration, we are forced to the conclusion that it was the intention of the testator that this half of the income to be distributed among his grandnephews and grandnieces was to be distributed to such of them as were in being

when the distribution was to be made, except that, in case of the death of either grandniece or grandnephew before a final distribution leaving issue, the parent's share, both of the income and principal, was to be paid to the issue; but, in case of the death of either of the grandnephews or grandnieces during the continuance of the trust without issue, the half of the income of the property and the principal was to be divided among the survivors. It follows that the judgment appealed from should be modified in conformity with the views herein expressed, and as modified affirmed, with costs to the appellants and the plaintiff to be paid out of the estate.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

## Action No. 2.

INGRAHAM, J. This action was brought to construe the third clause of the will of William D. Thompson, deceased. The facts are stated in the case of these plaintiffs against these defendants, which was brought to construe another clause of the same will decided herewith. By the clause in question the testator gives to his executors the sum of $100,000 in trust to receive the rents, incomes, and profits thereof, and out of the net income to apply to the use of his nephew William D. Thompson, Jr., the annual sum of $700, and the whole residue of such net income to apply to the use of Josephine, the wife of the said William D. Thompson, Jr., and their children, by paying the same to her for the support of herself and children during their minority, and, as each child attains the age of 21, he or she shall be entitled to receive one equal share of such surplus of income above $700 per annum, the same being divided into as many equal shares as there shall be children of the said William D. Thompson, Jr., and Josephine, his wife, and one more share for the said Josephine, which she shall be entitled to receive for her own use during her life, after all the said children shall have attained the age of 21; and, "upon the death of the longest liver of them, the said William D. Thompson, Jr., and Josephine, his wife, this trust shall cease, and the trustees shall forthwith transfer and pay over the whole of the trust property, and the proceeds and increase thereof, to the children of the said William D. Thompson, Jr., and Josephine, his wife, and, if any of said children shall have died leaving issue, such issue shall receive their parents' share." At the death of the testator, William D. Thompson, Jr., had three children, all infants and unmarried. One of them, Stephen J. Thompson, died on April 27, 1897, without issue, during the continuance of the trust, his mother, Josephine Thompson, being still alive; and the question presented is as to who is entitled to the share of the income which the said Stephen J. Thompson had received during the continuance of the trust; or, in other words, whether this income vested in each of the three children of William D. Thompson, Jr., either upon the death of the testator or upon their arriving at the age of 21 years. What was said as to the intention of the testator in making this will in the opinion

construing the ninth clause of the will before referred to is applicable here. It is quite clear that the intent of the testator was to create a fund for the support and maintenance of his nephew William D. Thompson, Jr., and his family. Thus, he gives a yearly sum to his nephew to be first paid out of the income from the trust fund, the balance of the income to be paid to his nephew's wife for the support of herself and children. As each child arrives at the age of 21, however, that child was to have a share of the income, which was then to be paid to that child until the termination of the trust, subject to be increased upon the death of the father, or upon the death or remarriage of the mother. That no right to this income vested in either of the children of William D. Thompson, Jr., upon the death of the testator, was apparent; for during their minority the income was to be paid to their mother for the support of herself and her children. It must be clear that, if either of these children had died before arriving at the age of 21, no portion of this income would have been payable to the child's next of kin, but the income would have been divided as though that child had never existed. That, certainly, was the intention of the testator. Then, upon the arrival of any child at the age of 21, the share of the income which had before been paid to his mother for his support was to be paid to him; but it was paid to him as one of the children of William D. Thompson, Jr., and to carry out the intention of the testator that the income of this trust fund was to be applied to the support of the family of his nephew. The whole intent of the testator, as expressed in this clause of the will, seems to provide a fund for the support of his nephew's family, to be paid to them in the way that he determined was the most conducive to accomplish that end. To allow a portion of this trust fund to be paid to the legatees of either one of these children dying without issue during the trust would violate what seems to me to be the clear intention of the testator. The bequest of the remainder upon the termination of the trust, upon the principles stated in the opinion construing the ninth clause of the will, would have to be distributed among those children of William D. Thompson, Jr., who were alive at the termination of the trust, except in the contingency of one dying leaving issue, in which case such issue was to receive the parent's share. Now, it certainly could not have been the intention of the testator to have the income during the continuance of the trust, which had been payable to the child who died without issue, paid to his legatees, when the legatees would not have been entitled to receive any part of the principal upon the termination of the trust. Upon the whole case, I think that the intention of the testator, as expressed in this clause, was that a share of the income should be paid to each of these children of his nephew William D. Thompson, Jr., upon his attaining the age of 21 years; that, upon the death of any one of William D. Thompson's children during the continuance of the trust, the share of the income paid to the child dying should be paid to the survivors and their mother in equal shares. It follows that the judgment appealed from must be modified in conformity with the views herein expressed, and as

modified affirmed, with costs to the appellant and to the plaintiffs out of the fund.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

HATCH, J. (dissenting). These are two actions brought by the plaintiff to obtain a construction of the last will and testament of William D. Thompson, deceased. In the first the plaintiff asks for the construction of the ninth clause of the will, and in the second of the third clause. In the discussion we shall proceed in the inverse order.

The testator died on June 27, 1874, and his will was admitted to probate by the surrogate of New York county on August 10, 1874. He was unmarried, and his nearest relatives consisted of nephews, nieces, grandnephews, and grandnieces, and to these relatives he left his entire estate, except as he attempted, at least, to make, through his trustees, certain collateral bequests. As to these, however, no question is presented by the present actions.

The testator was possessed of a considerable estate, and the whole scheme of the will shows an unmistakable intent on his part to make specific disposition of his entire property. He evidently did not intend to die intestate as to any part of his estate, and the disposition of his property is expressed with a considerable degree of particularity. By the first clause of his will he directs the payment of his debts; by the second, he provides for the selection of bonds and stocks, amounting at par value to the sum of $500,000, and directs his executors to make a division thereof into five equal parts, so that the value of each share shall be $100,000. One of these shares, amounting at par value to $100,000, he bequeathed to his nephew John B. Thompson absolutely. By the third clause, which is the subject of the second action, so far as is important to any question which the case presents, he bequeathed as follows:

"One other of said shares, amounting at par value to one hundred thousand dollars, I give and bequeath unto my executors herein named, or such of them as shall qualify and act as executors, of this, my will, the survivors and survivor of them, and their successors and assigns, upon the trusts and to the intents and uses following,—that is to say: To collect and receive the interest and dividends thereon falling due after my decease, and out of the net income to apply to the use of my nephew William D. Thompson, Jr., of Baltimore, in the state of Maryland, the annual sum of seven hundred dollars, to be reckoned from the time of my death, and payable half yearly during his life; and the whole residue of such net income to apply to the use of Josephine, the wife of the said William D. Thompson, Jr., and their children, by paying the same to her for the support of herself and children during their minority; and as each child attains the age of twenty-one, he or she shall be entitled to receive one equal share of such surplus of income above seven hundred dollars per annum, the same being divided into as many equal shares as there shall be children of the said William D. Thompson, Jr., and Josephine, his wife; and one more share for the said Josephine, which she shall be entitled to receive for her own use during her life, after all the said children shall have attained the age of twenty-one. In case of the death of the said William D. Thompson during the life of said wife, the portion of income hereinbefore set apart for him is to be added to the other shares in equal proportions. In case the said Josephine shall at any time marry another husband, the right to share of said income shall thenceforth cease; in which event, or in the event of her death

during the lifetime of said William D. Thompson, Jr., the share of incomes hereinbefore set apart for her shall be added to the shares of the said children in equal proportions. Upon the death of the longest liver of them, the said William D. Thompson, Jr., and Josephine, his wife, this trust shall cease, and the trustees shall forthwith transfer and pay over the whole of the trust property, and the proceeds and increase thereof, to the children of the said William D. Thompson, Jr., and Josephine, his wife, and, if any of said children shall have died leaving issue, such issue shall receive their parents' share."

By the fourth clause he bequeathed another of said shares to his nephew Charles R. Thompson during life, with remainder to his issue; and, if he should die without issue, the remainder to be disposed of as directed by his last will and testament; in the event of issue, the net income of said share to be applied to the children or issue, the issue of a deceased child taking their parents' share during the life of the oldest child who should be living at the date of testator's death; upon the termination of the trust by the death of said Charles R. Thompson or of his oldest child, to distribute the principal of said share according to the laws provided in case of intestacy. By the fifth clause the testator gives and bequeaths to his executors in trust to apply the net interest, dividends, and income to the sole use of his niece Elizabeth Y. Thompson during her life. The subsequent disposition of the income and principal of this share is the same, as to the persons who take thereunder, as is contained in the fourth clause. The sixth clause, in like manner, vests another of said shares in trust, the interest, dividends, and income therefrom to the sole and separate use of his niece Mary Rebecca Thompson; and the subsequent disposition of this share, as to the persons therein named, is the same as in the two preceding clauses. By the seventh clause the testator devised to his sister-in-law Rebecca R. Thompson, widow of a deceased brother, a life estate in certain real estate in the city of Baltimore, with remainder over to her two daughters, if they should survive her, or to their issue, if leaving the same, absolutely; and, in case either of the two daughters died during the lifetime of the mother without issue, to the surviving daughter in case of her survival or death, before her, leaving issue. If neither of the daughters survived or left issue, the property then to form a part of the testator's residuary estate. The eighth clause is advisory as to the expenditure of income by the nephew Charles and the nieces Elizabeth Y. and Mary Rebecca. The ninth clause, which is the subject of the first action, reads as follows:

"The foregoing bequests being first duly provided for, and not otherwise, I give to my nephew John B. Thompson, for his life, my building and lot No. 139 Broadway, in the city of New York; and upon his death I give and devise the same to my said executors, the survivors and survivor of them, their successors and assigns, upon trust to receive the income thereof during the life of John C. Thompson, son of the said John B. Thompson, and apply the same as follows: One quarter to the use of the said John C. Thompson, and one-quarter to the use of his mother, the wife of the said John B. Thompson; and, if she shall die or remarry within said term, then from that time to apply the entire half of said income to the use of the said John C. Thompson, and the other half to apply during the whole of said term to the use of all the other grandnieces and grandnephews of mine in equal shares, the issues of any deceased taking their parents' share; and, upon the death of the said John C.

67 N.Y.S.—14

Thompson, to sell and convey the said property in fee, and to distribute the proceeds among all my grandnieces and grandnephews in equal shares, the issue of any deceased grandnephew or grandniece taking their parents' share."

The other clauses of the will are not important to any question arising in this case. The eleventh clause, however, contains a comprehensive residuary clause, and provides that, after all the other articles and provisions of the will have been fully complied with, the remainder is devised and bequeathed to his nephew John B. Thompson, to have and to hold the same forever.

William D. Thompson, Jr., died in 1875, leaving Josephine, his widow, surviving, and Stephen J. Thompson, Marie Louise Norris, and Annie O'Donnell, children of William D. and Josephine. Stephen died April 27, 1897, having attained his majority, unmarried, and without issue. He left a last will and testament, by which he bequeathed his whole estate to his mother. Josephine, the mother, is still living, in consequence of which the trust created by the third clause of the will has not yet terminated. The second of the two present actions has relation solely to the disposition of the income which by the terms of the third clause was payable to Stephen J. in severalty upon his becoming of the age of 21, and which had been set apart and paid to him at and prior to the time of his death.

But, while the action only involves the present disposition of Stephen J.'s share in the income of the trust fund, nevertheless, as I view the case, it becomes essential, in the determination of such question, to determine also whether the corpus was vested in persons in being at the date of the testator's death, or whether it was contingent, and postponed until the time of the distribution of the corpus of the trust estate. If the estate was vested in persons in being at the date of the testator's death, then we think it cannot be questioned that Stephen J. had a vested interest in and to the income, which was set apart for him, which would pass under his will to his mother, Josephine. By the terms of the third clause, the devise therein is to the executors named, and consequently the trust estate vested in them; but, as there was no devise of any remainder to them, they simply took a vested estate, subject to the execution of the trust, which was limited to the life of the longest liver of William D. and Josephine, and upon the happening of that event the only duty imposed upon them by virtue of this clause was to distribute among those then entitled to take. This was the entire estate which the trustees took (In re Tienken, 131 N. Y. 391, 30 N. E. 109), and such estate is entirely consistent with the immediate vesting of the estate in remainder at the date of the testator's death (In re Brown, 154 N. Y. 313, 48 N. E. 537). The gift of the income under this third clause is, first, $700 per annum to William D.; then to the mother, Josephine, and their children, the same to be received by her for the support of herself and children during their minority; and by subsequent provision Josephine is given one equal share therein with the children after they have all attained their majority. The $700 to William D. and the share to Josephine, in the event of the death of either or upon the remar-

riage of Josephine, is to be added to the principal of the share of the others entitled to take and divide in equal proportions. As to the children's share, however, no such disposition is made, as there is no gift over of the income for support and maintenance during their minority, nor after they attain their majority, and a specific share of the income is set apart to the use of the child reaching majority. As to the income payable to Josephine during the minority of the children for the support of herself and them, it is not necessary now to determine in whom such income was presently vested, or what would be its disposition had one of the children died during minority leaving no issue, as no such question is now material. Upon any child arriving at the age of 21 years, such child took in severalty, and, so far as language is concerned, it is a gift absolute to such child, and vested in him or her an interest absolute. While the language of the will is that the income shall be applied to the support of the children during minority, yet, upon the payment over of the income when the child attains majority, no language is used indicating that it is to be used for support and maintenance. In Earl v. Grim, 1 Johns. Ch. 494, there was a gift of interest from the investment of the trust estate to certain named persons, without any direction as to the disposition of the residuum of the estate, the language being one-sixth part of each of the persons named and to the survivors of them, and the court held that the survivors of them was to be construed to refer to such of them as should be living at the testator's death. The court held the rule to be that a devise of rents and profits of land was a devise of the land itself, and that the survivors in existence at the date of the testator's death took a vested interest therein. In commenting upon the case of Newland v. Shephard, 2 P. Wms. 194, the chancellor said:

"The testator devised the residue of his real and personal estate to trustees, in fee, in trust to pay the interest thereof for the maintenance of his grandchildren until they should come of age or be married, and he went no further, nor made any other disposition of his estate, and yet this was held to pass the absolute property to his grandchildren after the age of 21. This case has been questioned, and, perhaps, very justly; for there was an express limitation of the period of the payment of interest to the minority of the children; but, in a case in which there is no such limitation, I apprehend the decision would be deemed correct."

In the present case there was no limitation upon the payment of the income to the children, except at the termination of the trust, when they took the whole of the trust estate. The same rule was also applied in Eldridge v. Eldridge, 9 Cush. 516; Dawson v. Killet, 1 Brown Ch. 119. By express provision of our statute (1 Rev. St. 773, § 2), the rules governing estates and interests in land, where they are founded upon statutes or general principles of law, are to be applied, so far as practicable, to like estates and interests in personal property. The rule as laid down in Schouler, Wills, § 562, reads:

"Any present vested interest in the income carries prima facie a vested interest in those who shall finally take the capital, nor does delay in settling the testator's estate and paying over prevent a legacy from vesting at the time of the testator's death. Directions to sell at a late period prescribed are consistent with a vested remainder."

1 Jarm. Wills, 614.

By the terms of this clause it is clearly evident that the children of William D. and Josephine took an immediate interest in the income at the date of the testator's death. This income was then presently payable for their benefit during minority, and vested in them by express language upon their attaining majority; and, within the foregoing authorities, the conclusion would seem to be authorized that it was the intent of the testator to vest an estate in the persons in being at the testator's death to whom the remainder was devised, and such vesting of the income will be controlling of the intention to vest the estate, unless by subsequent language of the will such intention is to be deemed excluded.

It is claimed by the appellants that the subsequent language of the devise clearly indicates that the estate was contingent, and not vested, within the meaning of the statute. 1 Rev. St. 723, § 13. The basis of this claim rests in the fact that the gift is not present, but future, and that nothing is to be received from the corpus of the trust unless the children are alive at the time of the division. This conclusion is arrived at by the expression contained in the will, that, if "any of said children shall have died leaving issue, such issue shall receive their parents' share." This clause clearly indicates that the death mentioned is plainly one after the death of the testator before the time appointed for distribution, and the rule of many cases is invoked that where a time for distribution is mentioned other than the death of the testator, and there is an intervening life estate, the interest in the corpus does not vest until the time arrives for distribution. But this is subject to the rule that if the gift be severed upon the instant from the general estate for the benefit of the legatee, and the interest thereon is paid to him until the period of distribution, the mere direction to pay at a subsequent time will not suffice to prevent the present vesting of the estate. The whole subject is always one of intention, to be gathered from the particular clause and from the scheme of the will as a whole, the vesting of the estate to receive the most favor at the hands of the court. Certain decisions have narrowed somewhat the application of these rules. In Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709, there was a devise of the trust estate to a mother for and during her natural life, with remainder over to her children, share and share alike, and to their lawful representatives, forever, as tenants in common per capita, the issue of any child who may then be dead to take his or her deceased parent's share. The life tenant had two children in being at the time of the testator's death. Both children died before the termination of the trust estate, without issue, and it was held that the estate was contingent, and not vested. As there was no gift over to meet such contingency, the testator died intestate as to the fund. In that case it is noticeable that the children of the life tenant took no beneficial estate in the trust fund at any time, and could take none therein, unless upon the contingency that they survived the death of the life tenant. They were remainder-men, pure and simple,

and could take in no other way.  In the present case the remain-der-men in being at the date of the testator's death took imme-diately the income of the estate, and the receipt of such income, by the terms of the will, was continuous until the termination of the life estate.  So that they instantly became vested with a bene-ficial interest therein upon the testator's death.  In Bowditch v. Ayrault, 138 N. Y. 222, 34 N. E. 514, the will provided for the crea-tion of separate and independent trusts, to commence at the date of the testator's death, and which might continue for the full term permitted under the statute.  By subsequent clause the trustees were directed to convert all the rest, residue, and remainder of his estate, and divide it among certain named children of the broth-ers and sisters of the testator who should be living at the time of his death, and the descendants of such of said children as might be deceased when the estate was distributed; and it was held that the gift to the children living at the time of the testator's death imported a gift primarily to such children, and that "futurity" was not annexed to the substance of the gift, within the meaning of that term, and that such children took a vested interest, subject to be devested in favor of the heirs and next of kin of those who should die without issue, and the substitution of such issue in their place and stead.

It is at once noticeable that the clause in the will we are con-sidering differs in essential respects from both of these cases.  We have already noticed the difference between the present case and the Cammann Case, and the difference between the former and the Bowditch Case consists in the fact that the children who should take are named; but therein the children did not take any interest in the trust estates until the termination of the estate of the life ten-ant, while in the present case the children take an immediate bene-ficial interest, which continues until finally merged by the distribu-tion of the corpus of the estate.  There is therefore much reason for holding that, as the testator vested and intended to vest in the children of William D. and Josephine, who should be in existence at the time of the testator's death, a beneficial interest in the in-come to be derived from the estate, it furnished the equivalent of the designation of the children which was found controlling in the Bowditch Case.  It is clearly distinguishable from the Cammann Case in the fact that in that case no children were named and no beneficial interest passed until the termination of the estate of the life tenant.  Here the devise is to the children of William D. and Josephine.  None are named, but each was to share equally, and the issue of each was to take.  The devise, therefore, would appear to answer all the requirements of a devise to a class.  It was the gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and all took in equal shares, dependent in amount, both as to income and corpus, upon determination of the ultimate number. In re Kimberly's Estate, 150 N. Y. 90, 44 N. E. 945.  As they took an immediate beneficial estate, the whole clause of the will will

be satisfied by construing the same as indicating an intent that the estate should vest in the children in being at the date of the testator's death, subject to be devested in favor of the heirs and next of kin of a child dying without issue, or the substitution of the issue in the event of the death of a child leaving issue, and also to open and let in after-born children. Such rule is well established, and has been continuously recognized. Monarque v. Monarque, 80 N. Y. 320; In re Brown, supra.

If I am correct in the construction of this clause of the will, it follows that Stephen J. Thompson took a vested interest in the income of the trust fund and in the corpus of the estate. Such vested interest he could bequeath by will, and, having bequeathed it to his mother, it vested his interest in her, and she is presently entitled to the income, and will eventually be entitled to Stephen J.'s share in the corpus of the estate.

Much that has been already said applies with equal force to the construction of the ninth clause of the will, the subject of the first action. By its provisions the building and lot therein mentioned are devised to John B. Thompson, a nephew, during life, and on his demise the trust estate is vested in the executors, who hold the same title as is vested in them by the third clause. This trust requires the payment to John C. Thompson, son of John B. and grandnephew of the testator, of one-quarter of the income during his life, and one-quarter to the use of his mother during her life or until she remarry, in either of which events the whole of the one half of the income is to be applied to the use of John C., and the other half applied during the whole term to the use of all the other grandnieces and grandnephews in equal shares, the issue of any deceased taking the parents' share. This trust is to continue during the life of John C., when the executors are directed to sell and distribute the proceeds among all the grandnieces and grandnephews in equal shares; the issue of any grandniece or grandnephew having died to receive the parents' share. There are only three items of difference between the devise in this clause of the will and the bequest in the third clause, and these I regard as not being so material in character as to make the construction of the ninth clause other or different from that which I have applied to the third clause. These items of difference are—First, that the property devised is real estate; second, the individuals who are to take are a nephew, John B., who is the life tenant, John C., his son, who is to receive a quarter of the income upon the life estate, and a half in addition upon a contingency, and the devise of the remainder of the income and corpus is to grandnephews and grandnieces and the issue of those who have died; and, third, the executors are charged with the duty of selling and conveying as well as distributing. In all other respects there is no difference.

The intervention of the two life estates, one as to corpus and the other as to income, does not change the effect of the devise, as the addition of a life estate fastened upon the income does not detract from the vesting of the eventual estate or destroy the trust created.

Nor does the fact that the direction is to sell and distribute change the rule from that which applies in the present case to the direction to distribute alone. In the Bowditch Case there was the direction to sell real estate and distribute the proceeds, but this was not regarded as sufficient to change the rule. The class of persons who are to take the remainder of the estate are quite different from those who take under the third clause, but the remainder over embraces the children of William D. and Josephine Thompson. The third clause does not embrace the others, but the class is as definitely named in one provision as in the other, and as the language is, with respect to the class who shall take, almost similar, there is no reason, so far as I am able to see, why a different construction should obtain.

In one view of the ninth clause, however, there is a seeming anomaly; for while the trust estate is to continue, so far as the payment of income is concerned, during the lifetime of John C. Thompson, a grandnephew, and the corpus is only to be distributed upon his demise, yet a construction which vests the estate in the remainder-men on the death of the testator, subject to be devested and to admit of substitution of issue and after-born children, also vests in John C. Thompson an equal share as grandnephew of the testator. There is nothing in the language used in this clause of the will indicating an intent to prevent his participation therein, except as he is given an increased share in the income. This does not have the legal effect to prevent the remainder from vesting in such person, the same as in the other persons who take. Simonson v. Waller, 9 App. Div. 503, 41 N. Y. Supp. 662. This would only be accomplished by language showing a different intent. But when all the clauses of the will are read together, and especially the third clause with the ninth, it clearly appears that, although all the grandnieces and grandnephews are otherwise provided for in the several trusts of the estate, yet, notwithstanding such provision as is otherwise made, none are excluded from participation in the remainder of the property devised under the ninth clause. All of the children of William D. and Josephine are grandnephews and grandnieces, and yet they take with all of the others in the corpus of the estate devised by this clause of the will. I am unable to find in the will any indication of an intent on the part of the testator to exclude John C. Thompson from participation in the corpus of the estate, except so far as the inference is to be derived from the fact that he is given a life interest in the income derived therefrom. But, if this reason excludes him from participation in the corpus, it would equally exclude the grandnephews and grandnieces for whom provision is made in the third clause and elsewhere in the will. There is not the slightest indication, so far as I am able to discover, of any intent on the part of the testator to make any distinction between grandnephews and grandnieces, the children of the nephews and nieces who were the objects of the testator's bounty. As there is no reason for putting a construction on the ninth clause of the will which does not apply with sub-

stantially equal force to the third clause, I conclude that its construction must be the same.

There are no other questions presented by the record which seem to require discussion. The judgments should therefore be affirmed, with costs to all parties payable out of the estate.

RUMSEY, J., concurs.